475 So.2d 1255 (1985)
Donald S. BRAGG, Appellant,
v.
STATE of Florida, Appellee.
No. 84-1495.
District Court of Appeal of Florida, Fifth District.
August 15, 1985.
Rehearing Denied September 19, 1985.
*1256 Ricky R. Damerville, Orlando, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Margene A. Roper, Asst. Atty. Gen., Daytona Beach, for appellee.
DAUKSCH, Judge.
This is an appeal from convictions for "corruption by threat against a public servant",[1] "possession of a firearm in the commission of a felony"[2] and "unlawful discharge of a firearm in public."[3]
A neighbor heard and saw appellant in his yard screaming and cursing. After going back into his house appellant came out into his driveway and fired a handgun into the air, without saying anything. The neighbor's mother called the sheriff and when the deputy arrived he was told by the neighbor that she saw appellant again leave the house, go to his truck and retrieve a small box while saying "There is more where that came from." Deputy Stoner found out appellant had two telephone lines into his house and tried calling him on both numbers. No answer. Then while Stoner was talking to the neighbor he saw appellant come out of his house. Stoner asked appellant to come over and talk to him. Appellant did not respond and went back into his house. A woman, later identified as appellant's wife, drove up and went into the house and then left after about a minute. Stoner talked to the woman, said he determined appellant was a danger to himself and the public. A small army of deputies, including the Special Weapons and Tactics team began to amass in the area. One of the SWAT team members was also a member of a negotiating team and he approached appellant's house about two hours after the beginning of the episode. He was armed with a twelve-gauge shotgun and .357 revolver when he rapped on a window saying "deputy sheriff." Appellant told him to go away and said if he or any other law enforcement official came onto the property or continued to bother him he would kill. The language used was forceful and vulgar, but ineffective because the deputy then cut off the electricity to the house and other measures were taken to isolate and envelop appellant. Appellant decided to surrender after talking to his lawyer.
During the ordeal appellant was seen and heard and taped talking on the telephone. He had a gun while talking on the telephone.
Appellant's side of the story was not essentially different from the state's. He said he came home after having a few beers and shooting pool. He said he was hollering at no one in particular and discharged his gun twice, as he often did before he cleaned it. He said when the deputies came he asked if he was under arrest or if they had a warrant. They said no, so he told them to leave.
*1257 Appellant was charged and convicted as mentioned before and here challenges the sufficiency of the evidence to support the charge. We agree there was not sufficient evidence to support the corruption charge and the felony firearm possession charge but hold that there was barely sufficient evidence to support the unlawful firearm discharge count.
The elements of the crime of corruption by threat against a public servant are set out in section 838.021, Florida Statutes (1983). That section provides in pertinent part:
(1) Whoever unlawfully harms or threatens unlawful harm to any public servant, to his immediate family, or to any other person with whose welfare he is interested, with the intent or purpose:
(a) To influence the performance of any act or omission which the person believes to be, or the public servant represents as being, within the official discretion of the public servant, in violation of a public duty, or in performance of a public duty.
(b) To cause or induce him to use or exert, or procure the use or exertion of, any influence upon or with any other public servant regarding any act or omission which the person believes to be, or the public servant represents as being, within the official discretion of the public servant, in violation of a public duty, or in performance of a public duty.
* * * * * *
§ 838.021, Fla. Stat. In this case, there was no evidence that appellant did anything to corruptly influence the deputy. The deputy came upon appellant's home property without a warrant, with no announced lawful purpose and particularly without even a pretense toward arrest of appellant for any unlawful act. It is not against the law for a person to possess a legal firearm in his home. It is not against the law for a person to tell anyone else to get off his property. Here there was no evidence that the deputies were on the property at any authorized person's invitation and there was evidence that appellant had lawful authority to make his demands that the deputies depart.
We are not at all unmindful of the potentially dangerous, even lethal, situation which existed and are not writing to instruct how to handle similar situations. That is not our function. It is for this court to determine whether the crime charged was proved against the accused. The elements of the crime require proof of a threat of unlawful harm to a public servant to influence the person threatened to do, or not do, some discretionary act. Here the state asserts that telling the deputy to leave his property or he would kill him was the statutory violation. If the deputy had a valid intent to arrest, which he never said he did, or a warrant or other legal process to serve or was otherwise on the property with legal right and authority, then appellant's demand and threat may have been illegal. But it was not proved at trial that the deputy was there in such circumstance.
The judgment and sentence for unlawful firearm discharge is affirmed. The convictions for corruption by threat and felony firearm possession are reversed.
AFFIRMED in part; REVERSED in part.
ORFINGER and COWART, JJ., concur.
NOTES
[1] § 838.021, Fla. Stat. (1983).
[2] § 790.07, Fla. Stat. (1983).
[3] § 790.15, Fla. Stat. (1983).