The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

Herman REVELLO, Jr.,
Defendant-Appellee.

No. 85SA284.

Supreme Court of Colorado,
En Banc.

April 13, 1987.

James F. Smith, Dist. Atty., Steven L. Bernard, Chief Trial Deputy, Brighton, for plaintiff-appellant.

David F. Vela, Colo. State Public Defender, Lynda H. Knowles, Deputy State Public Defender, Denver, for defendant-appellee.

LOHR, Justice.

The People appeal from that part of a judgment of the Adams County District Court dismissing a charge against Herman Revello, Jr. (defendant), of driving after revocation prohibited in violation of section 42–2–206, 17 C.R.S. (1984). The district court dismissed the charge on the basis that section 42–2–205(1)(b), 17 C.R.S. (1984), which governed the duration of the period of revocation of the defendant's driver's license, is unconstitutionally vague on its face. We reverse and remand for further proceedings.

I.

■ The Department of Revenue, Motor Vehicle Division (Department), issued an order effective August 15, 1978, revoking the defendant's driving privileges for a period of five years based upon the determination that he was an habitual traffic offender.[1] *See* §§ 42–2–202, –203, –205, 17 C.R.S. (1984). The five year period expired, but the defendant failed to provide the Department with any proof of compliance with financial responsibility requirements.[2] Thereafter, on April 5, 1984, the defendant was involved in a driving inci-

1. The statutes use the term "habitual offender." §§ 42–2–201 to –208, 17 C.R.S. (1984). For clarity, we use the term "habitual traffic offender," because the status of "habitual offender" is based solely upon convictions of offenses relating to motor vehicle laws.

2. The defendant was twice convicted of traffic violations during the original five year period of revocation. The Department therefore extended the period of revocation one year for each of those convictions, thus extending the period of revocation until August 12, 1985. At the hearing before the district court on the defendant's motion to dismiss the charge of driving after revocation prohibited, the defendant challenged the Department's authority to order these one year extensions, arguing that the statutes dealing with habitual traffic offenders are silent as to any authority on the part of the Department to order revocation of an habitual traffic offender's driver's license for a period other than five years from the date of the order of revocation. The district court, however, based its ruling

granting the defendant's motion to dismiss solely on its conclusion that section 42–2–205(1)(b) is impermissibly vague and made no ruling as to the defendant's challenge to the Department's authority to order one year extensions of the original order of revocation. Furthermore, the People do not seek to charge the defendant based on the fact that he was driving during the period of the extensions. Rather, the People seek to charge the defendant based on the fact that the defendant failed to provide the Department with proof of financial responsibility as required by section 42–2–205(1)(b) following the termination of the original five year period of revocation. We have held in our opinion announced today in *People v. Purvis,* 735 P.2d 492 (Colo.1987), that a person's driving status as revoked under section 42–2–206 continues until such time as the financial responsibility requirements of section 42–2–205(1)(b) are satisfied by the driver. Therefore, we are faced with no issue as to the propriety of the two one year extensions ordered by the Department in this case and we need not address that issue.

dent on the basis of which the district attorney filed an information in the Adams County District Court. The information charged the defendant with driving after revocation prohibited in violation of section 42-2-206, 17 C.R.S. (1984); driving under the influence of intoxicating liquor in violation of section 42-4-1202(1)(a), 17 C.R.S. (1984); and attempting to elude a police officer in violation of section 42-4-1512, 17 C.R.S. (1984).

The defendant filed a motion to dismiss the charge of driving after revocation prohibited. Following a hearing on the motion, the district court dismissed that charge on the basis that section 42-2-205, 17 C.R.S. (1984), which purports to extend the five year period of revocation of a driver's license until certain requirements are met, is unconstitutionally vague on its face. Specifically, the district court found that the phrase "[u]ntil such time as financial responsibility requirements are met" as used in section 42-2-205(1)(b) is unconstitutionally vague in that a defendant would have to guess as to the nature of those financial responsibility requirements. Therefore, the court ruled, there was "no way for the People to prove that the defendant did not have insurance as is required under the statutory financial responsibility law." The case proceeded to jury trial on the other two charges, and the defendant was convicted of both. The People then brought this appeal from that part of the judgment dismissing the charge of driving after revocation prohibited.

## II.

Section 42-2-206(1) provides in relevant part:

It is unlawful for any person to operate any motor vehicle in this state while the revocation of the department prohibiting the operation remains in effect. Any person found to be an habitual offender, who is thereafter convicted of operating a motor vehicle in this state while the revocation of the department prohibiting such operation is in effect, is guilty of a class 5 felony.

Section 42-2-205, 17 C.R.S. (1984), defines the period of revocation of the driving privileges of habitual traffic offenders for purposes of section 42-2-206. *See People v. Purvis,* 735 P.2d 492 (Colo.1987). Section 42-2-205 provides:

(1) No license to operate motor vehicles in this state shall be issued to an habitual offender, nor shall an habitual offender operate a motor vehicle in this state:

(a) For a period of five years from the date of the order of the department finding such person to be an habitual offender; and

(b) Until such time as financial responsibility requirements are met.

The issue before us is whether the phrase "[u]ntil such time as financial responsibility requirements are met" cannot operate to extend the five year period of revocation because the phrase is unconstitutionally vague. If the extension provision of section 42-2-205(1)(b) is void for vagueness, the period of revocation of the defendant's driver's license ended before the April 5, 1984, driving incident upon which the charge against him was based, thus prohibiting the People from prosecuting the defendant under section 42-2-206.

■ Statutes are presumed to be constitutional, and the party attacking the constitutionality of a statute has the burden of proving it unconstitutional beyond a reasonable doubt. *People v. Randall,* 711 P.2d 689, 691 (Colo.1985); *People v. Schoondermark,* 699 P.2d 411, 415 (Colo. 1985). In *People v. Schoondermark,* we set forth the standards applicable to a void for vagueness challenge to a statute:

The Due Process Clauses of the United States Constitution, U.S. Const. amend. XIV, and of the Colorado Constitution, Colo. Const. art. II, § 25, require specificity in criminal laws so as to give fair warning of the proscribed conduct. A penal statute is unconstitutionally vague if it "forbids or requires the doing of an act in terms so vague that [persons] of common intelligence must necessarily guess as to its meaning and differ as to its application." *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46

S.Ct. 126, 127, 70 L.Ed. 322 (1926).... The Due Process Clauses also seek to limit arbitrary and discriminatory enforcement of laws by requiring sufficiently clear and defined standards which are capable of fair application by police, prosecutors, judges and juries.... Thus, statutes satisfy due process of law requirements if their terms "are sufficiently clear to persons of ordinary intelligence to afford a practical guide for law-abiding behavior and are capable of application in an even-handed manner by those responsible for enforcing the law." [*People ex rel. City of Arvada v.*] *Nissen,* 650 P.2d [547,] 551 [Colo.1982].

*People v. Schoondermark,* 699 P.2d at 415–16 (citations omitted).

▮▮▮ "The vagueness test is not an exercise in semantics to emasculate legislation; rather, it is a pragmatic test to ensure fairness." *People v. Sequin,* 199 Colo. 381, 388, 609 P.2d 622, 627 (1980). Therefore,

> [s]tatutory terms need not be defined with mathematical precision in order to be valid. Rather, statutory language must strike a balance between two conflicting concerns; it must be specific enough to give fair warning, yet sufficiently general to address the problem under varied circumstances and during changing times.... Moreover, if the legislative intent is clear, imprecision of terms does not necessarily result in constitutional deficiency.

*Exotic Coins, Inc. v. Beacom,* 699 P.2d 930, 943–44 (Colo.) (citations omitted), *appeal dismissed,* — U.S. —, 106 S.Ct. 214, 88 L.Ed.2d 214 (1985). *See People v. Randall,* 711 P.2d at 692. In addition to these rules that guide our inquiry into constitutional sufficiency, we also look to the policies underlying the statute in order to resolve any "possible ambiguity in a manner fully consistent with the natural mean-

ing of the language of the statute." *People v. Sequin,* 199 Colo. at 386, 609 P.2d at 625. With these principles in mind, we turn now to the defendant's argument that section 42–2–205(1)(b) is unconstitutionally vague.

The defendant contends specifically that section 42–2–205(1)(b) is unconstitutionally vague because the term "financial responsibility requirements" is not defined in that part of Title 42 of the Colorado Revised Statutes dealing with habitual traffic offenders, sections 42–2–201 through –208, 17 C.R.S. (1984). Therefore, the defendant argues, a person of common intelligence must necessarily guess as to what those requirements are and how they are to be met.[3] We find the defendant's argument unpersuasive.

While the term "financial responsibility requirements" is not defined in that portion of Title 42 dealing with habitual traffic offenders, other portions of Title 42 explain what is meant by those words. In particular, the Motor Vehicle Financial Responsibility Act, sections 42–7–101 through –510, 17 C.R.S. (1984 & 1986 Supp.), provides a detailed guide for determining the nature of financial responsibility requirements in various contexts and how those requirements can be satisfied.

The starting point for our analysis is section 42–7–406, 17 C.R.S. (1984). That statute provides:

> (1) Whenever the director revokes the license of any person under section 42–2–122 [mandatory revocation for specified offenses] or 42–2–122.1 [revocation for driving with a specified blood-alcohol content or for refusing to submit to a chemical sobriety test], or cancels any license under section 42–2–119 because of the licensee's inability to operate a motor vehicle because of physical or mental incompetence, or cancels any probationary license under section 42–2–123, the di-

---

**3.** The "Order of Revocation" issued to the defendant provided that his revocation would remain "in effect until provisions of [section] 42–2–124, [17 C.R.S. (1973)], are complied with, [and] future proof of public liability insurance [is] filed with ... the Department of Revenue, Motor Vehicle Division." Although not disposi-

tive of the defendant's challenge to the facial constitutionality of section 42–2–205(1)(b), 17 C.R.S. (1984), this provision of the revocation order establishes that the defendant was expressly notified of the requirement that he supply proof of public liability insurance before his driving privileges would be restored.

rector shall not issue to or continue in effect for any such person any new or renewal of license until permitted under the motor vehicle laws of this state, and not then until and unless such person files or has filed and maintains *proof of financial responsibility* as provided in this article.

(2) Whenever the director suspends the license of any person under section 42–2–123 [suspension for accumulation of excessive "points"], the director shall not issue a probationary license to such person, nor shall the director at the termination of such person's period of suspension reinstate, reissue, renew, or issue a new license to such person unless such person furnishes the director a statement in writing under oath evidencing that he is then insured under an automobile liability policy or bond or unless such person has deposited or deposits money or securities as provided in section 42–7–418.

(Emphasis added.) "Proof of financial responsibility" is defined in section 42–7–408, 17 C.R.S. (1984):

(1) Proof of financial responsibility for the future when required under this article may be given by the following alternative methods: Either by proof that a policy of liability insurance has been obtained and is in full force and effect or that a bond has been duly executed or that deposit has been made of money or securities as provided in section 42–7–418. Proof of financial responsibility for the future in the amounts provided in section 42–7–103 shall be maintained for three years from the date last required and shall be furnished for each motor vehicle registered during that period.

(2) The term of the policy of liability insurance or the bond submitted as proof of financial responsibility for the future shall be for a minimum of three months.

The defendant acknowledges these statutes but argues that they do not apply to habitual traffic offenders because they make no cross-reference to any of the habitual traffic offender statutes. We disagree with the defendant's argument;

Section 42–7–406(1) applies to situations in which an individual's license has been revoked because of the danger or risk that the individual represents as a driver. The license of an habitual traffic offender is revoked for precisely the same policy reasons. *See* § 42–2–201, 17 C.R.S. (1984). The legislature intended to require individuals who have had their licenses revoked because of the threat they present to the safety of others using our state's roadways to comply with the requirements set forth in section 42–7–408. Our reading of sections 42–2–205 and 42–7–406 convinces us that the legislature therefore had in mind section 42–7–406 and its companion provisions, including section 42–7–408, when it provided in section 42–2–205 that a person whose license was revoked because of his status as an habitual traffic offender should be required to meet "financial responsibility requirements" in order to have his driving privileges reinstated. Only a common sense reading of the statutes is necessary to reach that conclusion.

The defendant contends, however, that section 42–7–406 was not intended to apply to section 42–2–205(1)(b) because section 42–2–205(1)(b) uses the term "financial responsibility requirements" while section 42–7–406 uses the term "proof of financial responsibility." We cannot ascribe such great significance to the lack of perfect congruence in the language employed in the two statutes. The two terms are sufficiently similar that a person of common intelligence would determine that they refer to the same responsibilities.

 In light of the policies served by these statutes, the intent reflected by the overall legislative scheme, and the fact that mathematical certainty in the drafting of statutes is not required, we hold that section 42–7–406 and its companion provisions give definition to the financial responsibility requirements applicable to a person whose license has been revoked pursuant to the habitual traffic offender statutes. Such individuals may not be issued a license to drive in this state unless they: (1) provide proof of liability insurance; (2) provide proof that a bond has been executed;

or (3) provide proof that a deposit of money or securities has been made with the director of the Department. § 42-7-408, 17 C.R.S. (1984). Other provisions of the Motor Vehicle Financial Responsibility Act detail the specific requirements with respect to each of these alternatives. *See, e.g.,* §§ 42-7-103(14) (amount of coverage required), -413, -414 (requirements of motor vehicle liability policy), -418 (requirements for giving money or securities). We need not discuss those requirements here. It is enough to say that they are sufficiently clear that persons of common intelligence can understand and comply with them. The legislative scheme is simply not as murky as the defendant contends.[4]

In summary, we believe that the intent of the legislature is sufficiently clear and we are persuaded that persons of common intelligence can discern what the financial responsibility requirements of section 42-2-205(1)(b) are and how they can be satisfied. The defendant thus received fair warning of the proscribed conduct. That part of the judgment of the district court dismissing the charge of driving after revocation prohibited is reversed and the case is remanded to the district court for reinstatement of that charge.

---

**4.** Literally construed, the district court's ruling also specified that in a prosecution under section 42-2-206 the People bear the burden of proving that the defendant did not have insurance. In order to be entitled to reinstatement of driving privileges, however, an habitual traffic offender is required to provide proof of financial responsibility, as defined in section 42-7-408, by filing such proof with the director of the Department of Revenue. *See* §§ 42-2-205, 42-7-103(5), -406, 17 C.R.S. (1984). Therefore, the burden of the People is merely to show that a defendant has not filed such proof. If the records of the Department of Revenue do not reflect that the defendant filed the required proof, and the defendant is unable to rebut this showing by the People, the People have carried their burden with respect to section 42-2-205(1)(b).