The PEOPLE of the State of Colorado,
Plaintiff–Appellant,

v.

Richard A. JANOUSEK,
Defendant–Appellee.

No. 93SA151.

Supreme Court of Colorado,
En Banc.

April 4, 1994.

**1190**

Peter F. Michaelson, Dist. Atty., Fifth Judicial Dist., Timothy A. Meinert, Chief Deputy Dist. Atty., Tamara Barkdoll, Deputy Dist. Atty., Eagle, for plaintiff-appellant.

David F. Vela, Colorado State Public Defender, Barbara A. Zollars, Deputy State Public Defender, Silverthorne, for defendant-appellee.

Justice VOLLACK delivered the Opinion of the Court.

This appeal was taken by the prosecution to review the Eagle County District Court's order finding section 18–8–306, 8B C.R.S. (1986),[1] unconstitutionally vague and overbroad on its face under the state and federal constitutions,[2] and its dismissal of the charge against the defendant, Richard Janousek.[3] We hold that the statute is not unconstitutional. We reverse the ruling of the district court and remand the case with directions to reinstate the charge.

---

1. "18–8–306. Attempt to influence a public servant."

2. The record on appeal contains a copy of Janousek's motion in which he argued First Amendment overbreadth and vagueness based on the United States Constitution and the Colorado Constitution, article II, §§ 10 and 25.

3. This case is properly before this court pursuant to § 13–4–102(1)(b), 6A C.R.S. (1987).

## I.

The defendant, Richard Janousek (Janousek), was charged with disorderly conduct in Vail Municipal Court based on an altercation that occurred on New Year's Eve of 1990. Janousek was found guilty and was sentenced to pay fines and court costs totaling $325. After a $300 cash bond was forfeited, a stay of execution was granted for $25 in remaining fines. Janousek failed to pay the fines, and municipal court Judge Cyrus G. Allen issued a notice to show cause why the defendant should not be held in contempt of court. Janousek failed to appear in court on June 28, 1991, and a warrant was then issued for contempt of court. Janousek was arrested and found guilty of contempt on October 24, 1991. An additional $30 warrant fee was assessed against Janousek, bringing his total fine to $55. Between October 24, 1991, and July 2, 1992, Judge Allen granted several stays of the fine. On July 2, 1992, the municipal court issued another warrant for Janousek's arrest based on his failure to appear at the final contempt hearing. Janousek then wrote a letter addressed to three public officials, including Judge Allen; Ron Phillips, Vail Town Manager; and Ken Hughey, Vail Chief of Police. The letter demanded that the judge reimburse Janousek "for all the torment [the judge] caused" and take certain actions in favor of Janousek.[4] Janousek's letter states in pertinent part,

> You must pay up now or face a much pricier levy, as I'll tolerate your crap no longer. One way or another, I'll GUARANTEE that you pay. You could make it VERY expensive for yourself, if you insist. In fact you might give up everything, just as you would have me do, all for the perversion you cooked up in your mind....

> . . . .

> ... We know you're a CROOK. You *DAMNED BASTARD!* How many other innocents have you screwed: Bet you lost count years ago! Does a dork like you think he can get away with MURDER? You might just end up your own victim!

> ... Of course, I'll make sure you pay for all of the torment you've caused. I wouldn't want you to do it again....

> . . . .

> Next time you abuse someone, if there is a next time, consider that not everyone has the same tolerance for abuse. When you get around to screwing someone it just may be his survival instinct to pummel you back. Shaming someone can cause violent results; just ask any psychiatrist. Point-blank, you must lie in the grave you dig. You should never pervert reality in order to drive someone crazy; they may end up sharing it with you in a way you never intended. Remember, everything you say can and will be used against you. Everything you do can and will be used against you. Better look over your shoulder. Look at all the damage you've done.

The defendant closed the letter with,

> See you soon, Frankenstein Janousek. The monster you created now turned against you[.]

Janousek never denied sending the letter; rather, he maintains that his purpose in writing this letter was merely to criticize Judge Allen's ruling in Janousek's disorderly conduct case. Janousek contends that he did not directly threaten Judge Allen or any other public official since, on the date defendant's letter was sent and received, Judge

---

4. Janousek submitted a bill to the judge to be reimbursed for the cost of litigation, including the return of bail, travel expenses, legal education expenses for defending himself, filing and copying fees, and lost wages. Janousek also requested a "life-time ski pass for putting up with your bullshit" and indicated that Judge Allen should send 200 canned goods to the needy. The reference to canned goods was a response to Judge Allen's habit of ordering defendants in his courtroom to donate canned goods to a charitable organization as part of their sentence. Janousek demanded, "See that Vail sends a check to the Eagle County Courthouse, in care of [my] case ... *pronto!*"

Allen no longer had jurisdiction to change the verdict or sentence.[5] Janousek further claims that, by writing "Next time you abuse someone, if there is a next time, consider that not everyone has the same tolerance for abuse," he did not personally intend Judge Allen any harm.

The district attorney charged Janousek with a violation of section 18-8-306, 8B C.R.S. (1986).[6] On April 1, 1993, Janousek moved to dismiss the case on the grounds that section 18-8-306 is unconstitutional on its face and that the statute cannot be constitutionally applied to him. The district court granted the motion to dismiss that same day. The court held that the statute was unconstitutional but made no further findings. On April 5, 1993, after conducting a hearing, the district court reaffirmed its earlier ruling to dismiss the case.[7] The district court found section 18-8-306 unconstitutional on its face since the words "economic reprisal" and "deceit" are vague. The district court further determined that the letter did not contain any direct threats against Judge Allen that justified criminal prosecution.

**5.** Janousek maintains that he did not request relief from the judge on any matter still pending before the court. At the time the letter was written, however, Janousek had not paid his fine for disorderly conduct and there was a warrant outstanding in the municipal court for his arrest based on his second contempt citation.

**6.** Section 18-8-306, 8B C.R.S. (1986), provides:
Any person who attempts to influence any public servant by means of deceit or by threat of violence or economic reprisal against any person or property, with the intent thereby to alter or affect the public servant's decision, vote, opinion, or action concerning any matter which is to be considered or performed by him or the agency or body of which he is a member, commits a class 4 felony.

**7.** The district attorney first received a copy of the motion on Thursday, April 1, 1993. A copy of the signed order was not delivered to the district attorney's office until Friday, April 2, 1993, at 5:00 p.m. Because the district court immediately ruled on the motion, the prosecution maintains that they did not have an opportunity to respond to and address the merits of the motion. Janousek maintains that the prosecution had an adequate opportunity to present evidence and argument on April 5, 1993, in support of its objection to defendant's motion.

## II.

Janousek argues that the district court was correct in concluding that section 18-8-306 is unconstitutional on its face and that the statute cannot be constitutionally applied to the defendant. Janousek avers that the statute is facially overbroad because the prohibitions contained therein impermissibly infringe upon constitutionally protected rights of freedom of speech and expression under the First and Fourteenth Amendments to the United States Constitution and under article II, section 10, of the Colorado Constitution. Janousek further claims that the statute makes criminal a form of pure speech since the letter was not intended to "threaten" anyone. We do not find the defendant's arguments persuasive.

### A.

The first issue to be resolved is whether the statute is unconstitutionally overbroad on its face [8] and as applied to Janousek in this case; and if the statute is not unconstitutionally overbroad, we will then examine the issue of facial vagueness.

Crim.P. 45(d) requires written motions to be served at least five days before the date specified for the hearing "unless a different period is fixed by rule or order of the court." The purpose of this rule is to allow time for adequate preparation in response to the motion. *See People v. District Court*, 189 Colo. 159, 538 P.2d 887 (1975).
Although the district court did not send notice at least five days prior to the hearing date, this procedural error is harmless given our ruling on the merits of this case and the result of this opinion.

**8.** The People contend that Janousek lacks standing to challenge the constitutionality of the statute on facial overbreadth grounds. We need not address the standing issue since, in *People v. Batchelor*, 800 P.2d 599, 601 n. 2 (Colo.1990), we determined that the Colorado doctrine of standing for overbreadth challenges is substantially similar to the inquiry into the statute's overbreadth, and that the standing doctrine has become more complex than the overbreadth doctrine.

■ "The doctrine of overbreadth is designed to prevent the state, when it regulates unprotected speech, from encroaching upon protected communications" that are beyond the statute's reach. *People v. Weeks,* 197 Colo. 175, 179, 591 P.2d 91, 94 (1979). A facially overbroad statute will be struck down as invalid if it substantially infringes upon constitutionally protected speech. *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973); *Whimbush v. People,* 869 P.2d 1245, 1247 (Colo. 1994). When analyzing a claim that section 18–8–306 is overbroad, we must examine whether the statute tries to prohibit speech that lies beyond the scope of governmental regulation. *Whimbush,* at 1247–48; *Bolles v. People,* 189 Colo. 394, 397, 541 P.2d 80, 82 (1975). If a statute regulates conduct and not merely speech, then "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *People In the Interest of J.M.,* 768 P.2d 219, 224 (Colo.1989) (quoting *Broadrick,* 413 U.S. at 615, 93 S.Ct. at 2917; *City of Englewood v. Hammes,* 671 P.2d 947, 950 (Colo.1983)). In First Amendment cases, an overbreadth challenge will not void a statute on its face unless the statute substantially chills constitutionally protected expression or activity. *People v. Ryan,* 806 P.2d 935, 939 (Colo.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 177, 116 L.Ed.2d 140 (1991).

■ Janousek claims that the statute attempts to control criminal conduct by curtailing his right to free speech. He argues that any critical letter written to a public official could conceivably violate that statute, and therefore it is overbroad on its face. Janousek argues that the broad language of the statute gives prosecutors a range of situations in which constitutionally protected communications could be construed as attempting to influence a public servant and result in prosecution under section 18–8–306.[9]

In light of the basic principles of the overbreadth doctrine, we find that section 18–8–306 is not facially overbroad. The language challenged in the statute is not facially overbroad since the statute does not sweep so comprehensively as to include within its proscriptions constitutionally protected speech. Section 18–8–306 clearly prohibits a person from using deceit or threats of violence or economic reprisal to influence a public servant's actions. The statute is narrowly tailored to enable the People to proscribe the type of conduct that rises to a level of criminal culpability.[10]

■ Nor does the statute chill the exercise of First Amendment rights. The minimal burden placed on a person's speech interests is constitutionally insufficient to provoke the overbreadth doctrine. *See People v. Becker,* 759 P.2d 26, 30 (Colo.1988). The forceful language of Janousek's letter goes beyond a mere expression of criticism and does not lie within the area of protected speech. Therefore, Janousek has no constitutionally protected right to make threats of violence to a public servant.

Because the statute purports to regulate conduct, the statute is not facially overbroad since any overbreadth does not appear to be

---

9. Janousek presents several factual scenarios to illustrate the overbreadth of this statute: a political advertising campaign designed to influence the state legislature on public policy such as gun control could be labeled deceitful by a prosecutor; an editorial criticizing a public official and encouraging that official to change his view could be determined inaccurate and thus deceitful by a prosecutor; and a boycott or threat of a boycott against a store owned by a public official could be deemed prosecutable under this statute. We need not consider these factual scenarios at this time but note that these examples can be readily distinguished from the conduct at issue here.

10. We recently decided, in *Whimbush v. People,* 869 P.2d 1245 (Colo.1994), that § 18–3–207(1), 8B C.R.S. (1986) (the Colorado criminal extortion statute), was unconstitutionally overbroad on its face. Section 18–8–306 is significantly different from the criminal extortion statute because its prohibition is confined to attempts to influence public servants in their official capacities in order to improperly alter or affect the performance of their official duties.

real and substantial. For this court to invalidate the statute as overbroad, we would have to speculate whether prosecuting this defendant would cause others to be deterred based "on hypothetical conduct significantly different from that involved in this case." *People v. Bridges*, 620 P.2d 1, 5 (Colo.1980). We cannot say that the asserted overbreadth of this statute is substantial, and therefore find that Janousek's facial overbreadth challenge must fail.

## B.

▮ In view of this conclusion, however, we must still reach defendant's additional claim that section 18–8–306 is overbroad as applied to him. *See Weeks*, 197 Colo. at 180, 591 P.2d at 95. Janousek claims that the statute prohibits speech or expression without any further requirement of action. Janousek further contends that, if he can be prosecuted for a critical letter written to a judge who no longer had jurisdiction to change the verdict or sentence, then any person thinking or writing a critical letter to a public official could fear prosecution and would have their First Amendment rights chilled.

In *People v. Norman*, 703 P.2d 1261 (Colo. 1985), we were first presented with a challenge to the validity of section 18–8–306. This court declined to determine the constitutionality of this statute because we concluded that the evidence did not support defendant's conviction under the statute.[11] In *Norman*, we stated that the critical elements of this offense are (1) an attempt to influence a public servant (2) by means of deceit or by threat of violence or economic reprisal (3) with the intent to alter or affect the public servant's decision or action.

The purpose of the statute is to protect public servants from undue influence or intimidation by means of deceit or by threat of violence or economic reprisal.

At the hearing on Janousek's motion to dismiss, Judge Allen testified that he felt Janousek was threatening him in the letter. Judge Allen further testified:

> [I]t made me wonder whether it was worth the continued aggravation to be looking for the remaining $55 fine. In analyzing it further, though, I realized that the integrity of the justice system means that you can't be bending to threats of this nature.
>
> On a personal level, it made me do some serious, serious consideration as to whether I want to continue being a judge.
>
> . . . .
>
> The final decision on this case was rendered in—on about May 16th, 1991. And to get a letter of this type a year and three months after the decision was quite unusual.

Janousek's letter to Judge Allen falls within the statute's proscription of attempting to influence a public servant. Janousek's letter focuses on his frustration with the court system and his feeling that he was unjustly treated.

> We know you're a CROOK. You *DAMNED BASTARD!* How many other innocents have you screwed: Bet you lost count years ago! Does a dork like you think he can get away with MURDER? You might just end up your own victim!
>
> . . . Of course I'll make sure you pay for all of the torment you've caused. I wouldn't want you to do it again. . . .
>
> . . . .
>
> I thought of you when I heard the King verdict and its 'justice by hook or by crook.' It was your brand of perversion all

---

**11.** In *People v. Norman*, the defendant, a revenue officer of the Internal Revenue Service, was alleged to have made a single comment to an employee of the court assessor's office: that he could cause the employee lots of problems in the event she was unable to record the warranty deed the defendant had submitted. We determined that this comment did not permit an inference beyond a reasonable doubt that the defendant intended to alter or affect the employee's decision, and therefore did not establish an attempt on the part of the defendant to influence a public servant. *Norman*, 703 P.2d 1261, 1269–70 (Colo.1985).

over again.... A nut like you would probably say that [the verdict] was A–OKAY. Unless it happened to be your beaten face!

The letter contains numerous expressions of violent thought and contemplated action. Implicit and explicit in Janousek's letter is the threat of harm if he does not receive monetary compensation from the court. For example, Janousek writes,

> You must pay up now or face a much pricier levy, as I'll tolerate your crap no longer. One way or another, I'll GUARANTEE that you pay. You could make it VERY expensive for yourself, if you insist. In fact you might give up everything, just as you would have me do, all for the perversion you cooked up in your mind....
>
> ....
>
> Next time you abuse someone, if there is a next time, consider that not everyone has the same tolerance for abuse. When you get around to screwing someone it just may be his survival instinct to pummel you back. Shaming someone can cause violent results; just ask any psychiatrist. Point-blank, you must lie in the grave you dig. You should never pervert reality in order to drive someone crazy; they may end up sharing it with you in a way you never intended. Remember, everything you say can and will be used against you. Everything you do can and will be used against you. Better look over your shoulder. Look at all the damage you've done.

The tone and language of the letter evince a threatening manner. The language suggests conduct that is squarely within the statute's proscriptions and is not protected by the First Amendment. The statute is therefore constitutional as applied to the defendant.

III.

Relying on language in *New York Times v. Sullivan*, 376 U.S. 254, 269, 84 S.Ct. 710, 720, 11 L.Ed.2d 686 (1964),[12] the district court determined that the words "deceit" and "economic reprisal" render the statute unconstitutionally vague because the words are not defined in the statute. The court reasoned that the statute is facially unconstitutional because "it strikes down the statements that could be decided to be deceitful by one person and that[ ] [are] denied by another, both of whom may be public officials." Because the district court did not find a direct threat of violence in Janousek's letter, it granted his motion to dismiss.

 In addressing a challenge to a statute as unconstitutionally vague, we are guided by several basic principles of statutory construction. A statute is presumed to be constitutional, and the party challenging its validity has the burden of proving unconstitutionality beyond a reasonable doubt. *People v. Gomez*, 843 P.2d 1321, 1322 (Colo. 1993); *People v. Rosburg*, 805 P.2d 432, 439 (Colo.1991); *People v. Revello*, 735 P.2d 487, 489 (Colo.1987). The essential inquiry is whether the statute fairly describes the conduct forbidden so that persons of common intelligence can readily understand its meaning and application. *Gomez*, 843 P.2d at 1322. A penal statute must be sufficiently definite to give fair warning of proscribed conduct so that persons may guide their actions accordingly. *Regency Servs. Corp. v. Board of County Comm'rs*, 819 P.2d 1049, 1055 (Colo.1991); *People v. Batchelor*, 800 P.2d 599, 603 (Colo.1990). Further, a penal statute must define an offense with sufficient clarity to prevent arbitrary and discriminatory enforcement of the statute. *Gomez*, 843

12. The district court quotes *New York v. Sullivan*, 376 U.S. at 269, 84 S.Ct. at 720:

"The Constitutional safeguard, we have said, 'was fashioned to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people.['] [*Roth v. United States*, 354 U.S. 476, 484, 77 S.Ct. 1304, 1308, 1 L.Ed.2d 1498 (1957)] ... [']It is a prized American privilege to speak one's mind, although not always with perfect good taste, on all public institutions.' [*Bridges v. California*, 314 U.S. 252, 270, 62 S.Ct. 190, 197, 86 L.Ed. 192 (1941)] ... [and] '[t]his opportunity is to be afforded for "vigorous advocacy" no less than "abstract discussion." ' [*N.A.A.C.P. v. Button*, 371 U.S. 415, 429, 83 S.Ct. 328, 336, 9 L.Ed.2d 405 (1963).] "

P.2d at 1325; *People v. Schoondermark,* 699 P.2d 411, 415 (Colo.1985). However, "a criminal statute need not contain precise definitions of every word or phrase constituting an element of the offense." *Schoondermark,* 699 P.2d at 416 (citing *People v. Castro,* 657 P.2d 932 (Colo.1983); *People v. Nissen,* 650 P.2d 547 (Colo.1982)).

■ Words and phrases used in statutes are to be interpreted according to their generally accepted meaning, and the court has a duty to provide a reasonable and practical construction to the language so that the statute is not void for vagueness. *Rosburg,* 805 P.2d at 439.

■ A specific intent element contained in a statute may prevent a statute from being challenged for vagueness. *Gomez,* 843 P.2d at 1325; *see People v. Gross,* 830 P.2d 933, 938 (Colo.1992). As the United States Supreme Court has observed,

> The Court, indeed, has recognized that the requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid.... [W]here the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law.

*Screws v. United States,* 325 U.S. 91, 101–02, 65 S.Ct. 1031, 1035–36, 89 L.Ed. 1495 (1945) (citation omitted).

Section 18–8–306, 8B C.R.S. (1986), provides as follows:

> Any person who attempts to influence any public servant by means of deceit or by threat of violence or economic reprisal against any person or property, with the intent thereby to alter or affect the public servant's decision, vote, opinion, or action concerning any matter which is to be considered or performed by him or the agency or body of which he is a member, commits a class 4 felony.

Applying these rules of statutory construction, we note that neither "deceit" nor "economic reprisal" is defined in the statute. Both words, however, are terms of common usage, and people of ordinary intelligence need not guess at their meaning. We therefore refer to the dictionary definition of "deceit" and "economic reprisal" in determining the plain and ordinary meaning of these words. According to *Black's Law Dictionary* 1302 (6th ed. 1990), reprisal is defined as "any action taken by one person either in spite or as a retaliation for a[ ] [perceived] or real wrong by another." [13] *Black's Law Dictionary* defines deceit as "[a] fraudulent and deceptive misrepresentation ... used by one or more persons to deceive and trick another, who is ignorant of the true facts, to the prejudice and damage of the party imposed upon." *Id.* at 405. Similarly, in *Webster's Third New International Dictionary* 584 (1986), deceit is defined as "any trick, collusion, contrivance, false representation, or underhand practice used to defraud another."

■ Contrary to the district court's assertions, the statute is sufficiently specific so as to provide the constitutionally required guidance to citizens seeking to comply with the law, or to law enforcement officers seeking to enforce the statute. In our view, the statute clearly delineates the type of conduct—deceit, economic reprisal, or threats of violence—that subjects a person to criminal prosecution. The statute defines the offense with particular words to limit the scope of the offense, and the language is plain and unambiguous. We therefore conclude that the words "deceit" and "economic reprisal" contained in the statute are not unconstitutionally vague since these terms do not require a person to guess at their meaning.

■ Further, the statute is not vague since it requires the prosecution to prove that the defendant acted with the specific intent to influence a public servant's "deci-

---

**13.** Economic reprisal, by inference, refers to a retaliation that is monetary in nature.

sion, vote, opinion, or action concerning any matter which is to be considered or performed by him" by engaging in deceitful conduct or using threats of violence or economic reprisal against another.

■ We do not find section 18–8–306 to be either vague or ambiguous, and therefore conclude that the statute is constitutional.[14] *See People v. Weeks,* 197 Colo. at 178–79, 591 P.2d at 94 (rejecting a void-for-vagueness challenge to a portion of the telephone harassment statute by determining that the defendant's telephone calls to a woman during which the defendant described various sex acts could be fairly characterized as falling within the statute's proscription of obscene communication); *People v. Randall,* 711 P.2d 689 (Colo.1985) (upholding an indecent exposure statute against a vagueness challenge since the statute contained a readily identifiable objective standard for measuring the proscribed conduct).

## IV.

We find that the defendant has not met his burden of proving unconstitutionality beyond a reasonable doubt. Consequently, this court concludes that section 18–8–306 is neither vague, nor facially overbroad, nor is it overbroad as applied to this particular defendant. The statute possesses sufficient clarity to apprise a person of common intelligence of its meaning and application. The terms are clear and unambiguous in their meaning. Accordingly, we reverse the trial court's order dismissing the case and remand the case to the trial court with directions to reinstate the charge against the defendant.

MULLARKEY, J., specially concurs, and ERICKSON, J., joins in the special concurrence.

Justice MULLARKEY specially concurring:

I agree with the majority opinion that section 18–8–306, 8B C.R.S. (1986), is not unconstitutionally vague and overbroad on its face in violation of the state and federal constitutions. I write separately, however, because I disagree with the analysis employed by the majority in part II.B. of its opinion. In my view, we should not decide whether the statute is unconstitutional as applied to Janousek. Although styled as an "as applied" challenge, Janousek's complaint is not constitutional in nature. In fact, both Janousek and the trial court concede that Janousek could be punished under this statute if his letter constitutes a "threat of violence" within the meaning of the statute. As the People correctly point out, Janousek's argument that the statute is unconstitutional "as applied" to him is based on his contention that he has not violated the statute. This is a matter of statutory interpretation and not a question of constitutional law.

Section 18–3–306 provides that a person is guilty of attempting to influence a public servant if he or she:

[A]ttempts to influence any public servant by means of deceit or by threat of violence or economic reprisal against any person or property, with the intent thereby to alter or affect the public servant's decision, vote, opinion, or action concerning any matter which is to be considered or performed by him or the agency or body of which he is a member.

The critical elements of this offense are (1) an attempt to influence a public servant (2) by means of deceit or by threat of violence or economic reprisal (3) with the intent to alter or affect the public servant's decision or action. *People v. Norman,* 703 P.2d 1261, 1269 (Colo.1985). The problem in this case con-

---

**14.** An examination of similar statutes from other jurisdictions further supports our conclusion that the statute is constitutional. For example, in *Bragg v. State,* 475 So.2d 1255, 1257 (Fla.Dist.Ct. App. 5th Dist.1985), the court, construing § 838.-021(3)(b), Florida Statutes (1989), the statute which condemns threats of harm to a public servant, found that the statute properly related the proscribed threats to the performance of a public duty when it stated, "The elements of the crime require proof of threat of unlawful harm to a public servant to influence the person threatened to do, or not do, some discretionary act."

cerns the second critical element, the means by which the influence was attempted.

Although Janousek submitted a "bill" to the judge demanding outlandish items such as a life-time ski pass, no one is seriously maintaining that the basis of this charge is a threat of economic reprisal. Rather, the critical statutory language involved in this case is the phrase "threat of violence." Janousek claims that he did not directly threaten Judge Allen or any other public official. Although written in abusive and often profane language, Janousek argues that the letter was nothing more than a vituperative criticism of a decision reached by Judge Allen in a prior case. The prosecutor, however, contends that Janousek's letter goes beyond the mere expression of criticism and constitutes an actual threat of violence.

At the end of the April 5, 1993 hearing, the trial court expressly found that the phrase "threat of violence" in the statute was neither vague nor overly broad. I agree. See Watts v. United States, 394 U.S. 705, 707, 89 S.Ct. 1399, 1401, 22 L.Ed.2d 664 (1969) (per curiam) (holding statute which prohibited threats to kill the president to be constitutional on its face). However, the trial court believed that the statute did not apply to Janousek since there was "no direct threat of violence contained in defendant's letter." In other words, the trial court found that Janousek's letter did not fall within the scope of the conduct prohibited by the statute. The trial court did *not* hold that the statute was "unconstitutional as applied" to Janousek.

In my opinion, the trial court adopted an unduly narrow interpretation of the phrase "threat of violence" by requiring that the threat be "direct" before it will fall within the scope of section 18–8–306. In other contexts, we have defined the term "threat" to mean a statement of purpose or intent to cause injury or harm to another person, and have not required the threat to be "direct." See People v. Hines, 780 P.2d 556, 559 (Colo.1989); Schott v. People, 174 Colo. 15, 18, 482 P.2d 101, 102 (1971). Instead, the critical inquiry for First Amendment purposes is whether the statements, viewed in the context in which they were spoken or written, constitute a "true threat." Watts, 394 U.S. at 708, 89 S.Ct. at 1401; United States v. Welch, 745 F.2d 614, 618 (10th Cir.1984), cert. denied, 470 U.S. 1006, 105 S.Ct. 1364, 84 L.Ed.2d 384 (1985); United States v. Dysart, 705 F.2d 1247, 1256 (10th Cir.), cert. denied, 464 U.S. 934, 104 S.Ct. 339, 78 L.Ed.2d 307 (1983). A "true threat" is a serious threat, as opposed to mere political argument, talk or jest, Dysart, 705 F.2d at 1256, and the critical inquiry is whether those who hear or read the threat reasonably consider that an actual threat has been made. Id.

When the evidence presented at the hearing is viewed under the correct legal standards, and in the light most favorable to the prosecution, see, e.g., Hines, 780 P.2d at 559; People v. Brassfield, 652 P.2d 588, 592 (Colo. 1982), it is clear that the trial court erred in dismissing the charge against Janousek prior to trial. A jury could find that Janousek's letter constituted nothing more than a crude method of expressing criticism of Judge Allen, see Welch, 745 F.2d at 618, in which case Janousek would not be guilty of the crime of attempting to influence a public official. However, as the majority recognizes, the prosecution's evidence is sufficient to permit a jury to find beyond a reasonable doubt that Janousek's letter constituted a true threat of violence. Accordingly, the trial court's order dismissing the case should be reversed, and the case remanded to the trial court with directions to reinstate the charge against Janousek.

ERICKSON, J., joins in the special concurrence.