The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
February 6, 2025

## 2025COA14

**No. 22CA0563, *People v. Mena* — Constitutional Law — Colorado Constitution — Equal Protection; Crimes — Sexual Assault on a Child — Unlawful Sexual Conduct — Inducement or Coercion of a Child; Evidence — Admissibility — Victim Impact Evidence**

A division of the court of appeals holds, for the first time in a published case, that an alleged sexual assault victim's emotional and psychological reaction to a sexual assault may be relevant to the victim's credibility and to whether the sexual assault actually happened. In addition, the division addresses for the first time whether the age difference between a child sexual assault victim and the alleged perpetrator is a "means" by which the victim may be induced or coerced under section 18-3-404(1.5), C.R.S. 2024. Finally, addressing a matter of first impression, the division concludes that the defendant's conviction for unlawful sexual

contact (coerce child), pursuant to section 18-3-404(1.5), violates Colorado's unique equal protection doctrine because, as charged and prosecuted in this case, that statute proscribes the same or lesser conduct as the offense of sexual assault on a child, pursuant to section 18-3-405(1), C.R.S. 2024, but the former statute carries a harsher penalty than the latter.

Court of Appeals No. 22CA0563
Arapahoe County District Court No. 18CR3501
Honorable Joseph Whitfield, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Lucas Bienvenido Mena,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART AND VACATED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division VII
Opinion by JUDGE TOW
Pawar and Schutz, JJ., concur

Announced February 6, 2025

Philip J. Weiser, Attorney General, Sonia Raichur Russo, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Andrea R. Gammell, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Lucas Bienvenido Mena, appeals the judgment of conviction entered on jury verdicts finding him guilty of several sexual offenses.  This appeal presents several issues not previously resolved in any published appellate case in Colorado.

¶ 2     First, we must decide whether evidence of the psychological and emotional impact the crime had on an alleged sexual assault victim may be relevant to whether that victim's allegations are credible.  We also address section 18-3-404(1.5), C.R.S. 2024 — which prohibits coercing or inducing a child to engage in sexual contact or expose intimate parts "by any of the means set forth in section 18-3-402[, C.R.S. 2024]" — and must decide whether those "means" include each of the eight different ways of accomplishing sexual assault set forth in the latter statute.  Finally, we must consider Mena's as-applied equal protection challenge to his mandatory prison sentence for unlawful sexual contact (coerce child) in light of the fact that, as he was charged and prosecuted, his conviction for sexual assault on a child addresses the same conduct but carries the possibility of a sentence to probation.

¶ 3     Taking these issues in turn, we conclude that (1) evidence of the psychological and emotional impact of the assault on the victim

was relevant to the victim's credibility; (2) section 18-3-402(1) provides eight "means" by which a child may be induced or coerced under section 18-3-404(1.5); and (3) as charged here, Mena's disparate punishments for unlawful sexual contact (coerce child) and sexual assault on a child were a violation of his constitutional rights. Accordingly, we affirm in part and vacate in part, and we remand the case to the district court with directions for resentencing.

## I.    Background

¶ 4    At trial, the jury heard evidence that would support the following findings.

¶ 5    While at her grandmother's apartment, then-twelve-year-old K.B. went downstairs with Mena (K.B.'s step-grandfather) to get the mail. On the way back to the apartment, Mena pushed K.B. into the bathroom at the apartment complex pool, where he lifted her shirt, pulled down her pants, and touched and licked her breasts and vagina. Mena took photos of K.B. while she was undressed and then masturbated in front of her.

¶ 6    K.B. and Mena returned to the apartment, and soon after leaving, K.B. told her mother about the incident. K.B. underwent a

sexual assault nurse examiner (SANE) examination and recounted the assault to a physician's assistant. She also completed interviews with an Arapahoe County District Attorney investigator and a forensic investigator.

¶ 7 During the investigation, Mena admitted to masturbating in the bathroom and "grazing" K.B.'s vagina. Mena said he took photos of K.B. but only while she was clothed. He denied all other allegations.

¶ 8 In November 2021, a jury found Mena guilty of four felonies: sexual exploitation of a child, sexual assault on a child, unlawful sexual contact (coerce child), and enticement of a child. Mena was also convicted of misdemeanor indecent exposure. The trial court sentenced Mena to six years in the custody of the Department of Corrections (DOC) on the exploitation charge and indeterminate prison terms of six years to life on the remaining felony charges. The indeterminate sentences were imposed to run concurrently with each other but consecutively to the six-year term on the exploitation charge. In addition, the court imposed a concurrent six-month sentence on the indecent exposure charge, to be served in the DOC.

## II.    Victim Impact Evidence

¶ 9    Mena contends the trial court erred by admitting K.B.'s testimony about two different topics: how the assault affected her and her family emotionally and how her trust in others and her behavior changed after the assault. In particular, Mena challenges the admission of the following testimony.

¶ 10    The prosecutor inquired as to K.B.'s state of mind when, while at the hospital a few hours after the incident, she told her sister about the sexual assault. K.B. responded that she "was really like sad" because of what happened and because of her family's reaction. The prosecutor then asked K.B. "how it made [her] feel that [she] had kind of told [her] family something that made them sad?" K.B. said she "felt like it was [her] fault," and that she "didn't want to tell them."

¶ 11    On redirect, the prosecutor returned to the topic of K.B.'s emotional state after the assault, asking K.B. whether parts of what happened to her were more embarrassing to talk about than others. She said she was embarrassed to talk about her body parts and, specifically, to talk about Mena licking her.

¶ 12    The prosecutor also inquired about how K.B.'s behavior changed after the assault. She testified that she felt "[l]ike [she] couldn't trust people." K.B.'s wariness of others extended to anyone outside of her immediate family, including the doctor who performed her SANE exam, which K.B. testified she was not comfortable with because she "didn't feel like [she] could trust even the doctors." She also testified that for two years after the incident, she "started behaving really badly" and faked sickness to avoid going to school.

## A.    Standard of Review and Applicable Law

¶ 13    We review a trial court's evidentiary rulings for an abuse of discretion. *People v. Martinez*, 2020 COA 141, ¶ 25. "A trial court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law." *Id.* (quoting *People v. Williams*, 2019 COA 32, ¶ 21).

¶ 14    "Victim impact evidence is evidence that relates to 'the victim's personal characteristics and to the physical, emotional, or social impact of a crime on its victim and the victim's family.'" *Id.* at ¶ 29 (quoting *Schreibvogel v. State*, 228 P.3d 874, 883 (Wyo. 2010)). "Because 'the effect of a crime on a [victim or the] victim's family

5

often has no tendency to prove whether a particular defendant committed a particular criminal act against a particular victim,' such evidence is generally irrelevant during the guilt/innocence phase of a trial." *Id.* at ¶ 33 (quoting *State v. Graham,* 650 S.E.2d 639, 645 (N.C. Ct. App. 2007)).

¶ 15    Thus, the admissibility of victim impact evidence during this phase of the trial "turns on whether the evidence is relevant to determining whether the defendant committed the crime" for which they were charged. *Id.* "In criminal cases, evidence is relevant if the evidence makes it more or less probable that a criminal act occurred, the defendant was the perpetrator, or the defendant acted with the necessary criminal intent." *People v. Clark,* 2015 COA 44, ¶ 17; *see* CRE 401.

### B.    Analysis

¶ 16    We discern no error in the admission of the victim impact evidence.

### 1.    The Testimony Was Relevant to K.B.'s Credibility

¶ 17    Mena argues the challenged testimony was irrelevant because it did not impact K.B.'s credibility or "establish any of the elements of the charged offenses." The People counter that these statements

were relevant to K.B.'s credibility because her emotional and behavioral responses (including a newfound lack of trust in others) "are consistent with what a victim of sexual abuse can sometimes go through." We agree with the People.

¶ 18    K.B.'s credibility was a central issue in the defense's case. During opening statements, defense counsel said that K.B.'s "accusations [were] untrue," and what actually happened was that K.B. saw Mena masturbate in the pool bathroom, which upset her. The cross-examination of K.B. then relied on attacking her recollection of the assault and questioning whether the alleged events actually occurred.

¶ 19    Mena's argument that K.B.'s testimony was improper relies largely on *Martinez,* in which a division of this court held that victim impact evidence about the victim's depression and suicidal ideation after the sexual assault was not relevant to any material fact. *Martinez,* ¶ 40. Notably, the underlying factual issue in *Martinez* was whether the victim was too intoxicated to consent to sex. *Id.* at ¶ 5. The division observed that the testimony regarding the victim's mental state after the fact did not address her lack of recall for several hours on the night of the assault, nor did it "tend to prove

7

that [the defendant] possessed or lacked the criminal intent to be found guilty of sexual assault."[1]  *Id.* at ¶ 40.  The division concluded "the victim impact evidence was irrelevant and, thus, inadmissible." *Id.* at ¶ 32.

¶ 20     *Martinez* is distinguishable.  Notably, in that case, the division explicitly left unresolved whether such evidence would ever be admissible.  *Id.*  This case is meaningfully different from *Martinez* because Mena's defense hinged not on whether he knew the victim was incapable of consenting but, rather, on whether the events K.B. had described occurred at all.  In other words, whether K.B.'s description of the events was credible was the linchpin of the case. *See Venalonzo v. People*, 2017 CO 9, ¶ 33 (noting that child sex assault cases often turn on the victim's credibility, making the child's testimony the most significant evidence in such cases).

---

[1] Though the *Martinez* division spoke in terms of "criminal intent," we note for clarity's sake that the offense in that case was not a specific intent crime but, rather, sexual assault on a victim incapable of appraising the nature of her conduct, pursuant to section 18-3-402(1)(b), C.R.S. 2024, which requires the defendant to have knowledge of the victim's incapacity.  *People v. Martinez*, 2020 COA 141, ¶ 10.  We thus read *Martinez*'s reference to "criminal intent" to be a colloquial reference to "mens rea."

¶ 21    Moreover, unlike in *Martinez* — where the victim's emotional and behavioral changes did not shed light on any factual dispute regarding the night of the assault — K.B.'s newly developed distrust of others and severe behavioral changes in the aftermath of the alleged sexual assault are indicative of her having suffered a traumatic event, which relates directly to whether the events she described even occurred.[2]  *See King v. State*, 2023 WY 36, ¶ 42 (holding that the victims' mother's testimony regarding behavioral changes in her daughters before and after the start of the alleged sexual abuse was probative of whether and when the alleged incidents occurred); *Simmons v. State*, 504 N.E.2d 575, 581 (Ind. 1987) (testimony that the victim developed a fear of going outside by herself and stayed at home more often was probative of the fact that she had been raped); *State v. Dube*, 598 A.2d 742, 746 (Me. 1991) ("Evidence of changes in the victim's personality and behavior

---

[2] While the fact that, in the wake of the assault, K.B. began avoiding going to school is relevant, we note that her statement that she "didn't go to school for I think 2-1/2 years" is likely too attenuated to be of much relevance.  However, even assuming permitting that comment was erroneous, we discern no basis for reversal.  The comment was fleeting, no one mentioned the two-and-a-half-year duration of this behavior again, and it was generally cumulative of the permissible evidence regarding K.B.'s behavioral changes.

immediately after the time of the reported assault tends to prove that something of a traumatic nature had in fact occurred and thus was clearly relevant . . . ."); *State v. Cosey*, 873 P.2d 1177, 1182 (Utah Ct. App. 1994) ("Evidence of a drastic change in the victim's behavior is relevant circumstantial evidence that a traumatic experience such as rape has occurred."). To put it in terms the *Martinez* division used, because this evidence has some tendency to show that K.B. experienced the trauma she described, the evidence "tends to show the context or circumstances of the crime itself." *Martinez*, ¶ 34.

¶ 22 In light of Mena's characterization of the events, K.B.'s feelings when recounting her trauma are relevant to whether her accusations were true or fabricated. *See Dickerson v. Commonwealth*, 174 S.W.3d 451, 472 (Ky. 2005) ("[E]vidence of a victim's emotional state following a sexual assault [is permissible] as proof that the assault, in fact, occurred."). K.B.'s testimony makes it more likely that the allegations were not fabricated because she (1) persisted with her allegations despite her own feelings of guilt and sadness at prompting a negative reaction from her family and (2) was willing to undergo an uncomfortable medical

examination. *See People v. Myers*, 714 P.2d 513, 514 (Colo. App. 1985) (finding testimony that a victim had undergone counseling following the alleged sexual assault was relevant); *see also Dickerson*, 174 S.W.3d at 472 ("[E]vidence that [the victim] visited a rape crisis center for treatment was relevant to prove that she was sexually assaulted.").

¶ 23    Also, the fact that K.B. was more embarrassed to talk about some things Mena did than others helps explain why her disclosures were inconsistent at times — inconsistencies Mena's counsel focused on when cross-examining K.B. Indeed, as early as opening statements, Mena's counsel specifically attacked K.B.'s allegation that Mena had touched and licked her breasts and vagina. *See People v. Krutsinger*, 121 P.3d 318, 324 (Colo. App. 2005) (holding prosecutor did not improperly bolster victim's credibility in responding to defense counsel's attack on the same).

¶ 24    Whether K.B.'s emotional and behavioral state was based on Mena's touching her intimate parts or, as Mena argued, simply a response to K.B. seeing Mena masturbate in the bathroom was ultimately for the jury to determine. And K.B.'s extreme behavioral changes and new distrust of others after the assault are at least

arguably more corroborative of her description of the assault than Mena's. *See King*, ¶ 39 ("[V]ictim impact evidence is probative as to whether the incident occurred at all because physical or psychological trauma is the natural result of an assault.").

### 2. K.B.'s Testimony Was Not More Prejudicial Than Probative

¶ 25    Mena argues that, even if these statements were relevant, they were more prejudicial than probative. Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." CRE 403. "[T]he district court is accorded considerable discretion in balancing the probative value of the evidence against the danger of unfair prejudice." *People v. Dist. Ct.*, 869 P.2d 1281, 1285 (Colo. 1994). "Absent an abuse of discretion, a trial court's evidentiary ruling on the probative value and the prejudicial impact of the evidence will not be disturbed on review." *Id.*

¶ 26    Mena once again relies on *Martinez*, arguing that the admission of K.B.'s statements "had the potential to shift the jury's focus improperly from deciding whether the defendant, [Mena], committed the crime to whether a guilty verdict would assuage the trauma of . . . the victim." *Martinez*, ¶ 2.

12

¶ 27    But K.B.'s emotional and psychological responses to the incident and its aftermath were highly probative of her credibility, a central issue in the case. *See King*, ¶ 39. Any unfair prejudice from the jury sympathizing with K.B. was not likely to substantially outweigh this relevance. *See People v. Rath*, 44 P.3d 1033, 1041 (Colo. 2002) (requiring the court to exclude evidence under CRE 403 if its *incremental* probative value is *substantially* outweighed by unfair prejudice). We thus discern no abuse of the trial court's discretion.

### III.    Sufficiency

¶ 28    Mena next argues the prosecution's evidence was insufficient to prove the required elements of unlawful sexual contact (coerce child) under section 18-3-404(1.5). We disagree.

### A.    Standard of Review and Applicable Law

¶ 29    When reviewing a challenge to the sufficiency of the evidence, "we review the record de novo to determine whether the evidence before the jury was sufficient both in quantity and quality to sustain the conviction[]." *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005). We view the evidence in the light most favorable to the prosecution to determine whether the evidence was "sufficient to

support the conclusion by a reasonable mind that the defendant was guilty of the charge beyond a reasonable doubt." *People v. Griego*, 2018 CO 5, ¶ 24. "If there is evidence upon which the jury may reasonably infer an element of the crime, the evidence is sufficient to sustain that element." *People v. Phillips*, 219 P.3d 798, 800 (Colo. App. 2009).

¶ 30 To the extent a sufficiency challenge requires us to interpret statutory language, we do so de novo. *People v. Perez*, 2016 CO 12, ¶ 8. "When interpreting a statute, our task is to give effect to the intent of the General Assembly." *McLaughlin v. Oxley*, 2012 COA 114, ¶ 9. "To determine legislative intent, we look first to the plain language of the statute." *Id.* at ¶ 10. "We read words and phrases in context and construe them literally according to common usage." *Id.*

## B. Analysis

¶ 31 A person commits unlawful sexual contact (coerce child) when that actor "knowingly, with or without sexual contact, induces or coerces a child by any of the means set forth in section 18-3-402 to expose intimate parts . . . , for the purpose of the actor's own sexual gratification." § 18-3-404(1.5). Mena contends that the prosecution

14

failed to prove he "induced or coerced" K.B. by any of the means set forth in section 18-3-402, the sexual assault statute.

¶ 32   The crux of this issue turns on what the General Assembly intended by the phrase "the means set forth in section 18-3-402." Section 18-3-402(1) identifies eight different ways of committing sexual assault.  At the time of the offense, those eight ways were as follows:

(a)   where the actor "causes submission of the victim by means of sufficient consequence reasonably calculated to cause submission against the victim's will";

(b)   where the actor "knows that the victim is incapable of appraising the nature of the victim's conduct";

(c)   where the actor "knows that the victim submits erroneously, believing the actor to be the victim's spouse";

(d)   where "the victim is less than fifteen years of age and the actor is at least four years older than the victim and is not the spouse of the victim";

(e)   where "the victim is at least fifteen years of age but less than seventeen years of age and the actor is at least ten

15

years older than the victim and is not the spouse of the victim";

(f)     where the victim "is in custody of law or detained in a hospital or other institution" and the defendant uses their "position of authority to coerce the victim to submit";

(g)     where the defendant "while purporting to offer a medical service, engages in treatment or examination of a victim for other than a bona fide medical purpose or in a manner substantially inconsistent with reasonable medical practices"; and

(h)     where the defendant knows that "the victim is physically helpless and the victim has not consented."

§ 18-3-402(1)(a)-(h), C.R.S. 2018. The People contend that each of these subsections describes a "means" by which a victim may be induced or coerced into engaging in sexual conduct with a defendant. As relevant here, the People argue that Mena accomplished the inducement or coercion of K.B. by the means set forth in subsection (1)(d) — specifically, the combination of K.B.'s

16

being under fifteen and Mena being at least (and in this case significantly more than) four years older than her.

¶ 33    Mena counters that section 18-3-402(1)(d) is not a "means" but, rather, describes "pre-existing circumstances that make the use of such means or methods unnecessary."  According to Mena, section 18-3-404(1.5) only incorporates those categories of sexual assault that set forth affirmative conduct by the defendant that causes the victim's submission or impairs the victim's capacity.  Specifically, Mena argues that only one of the eight methods of committing sexual assault under section 18-3-402(1) — subsection (1)(a) — speaks in terms of means.

¶ 34    Because both of these interpretations are reasonable, the statute is ambiguous.  *Pellegrin v. People*, 2023 CO 37, ¶ 23 ("A statute is ambiguous when it is reasonably susceptible of multiple interpretations.")  However, the history of the statutory language — both before and after Mena's actions — provides insight into the General Assembly's intent.  *See Carrera v. People*, 2019 CO 83, ¶ 18 (noting that statutory history is an appropriate aid in construing ambiguous statutes); *see also* § 2-4-203(d), C.R.S. 2024 (authorizing the court to consider former statutory provisions and

17

laws upon the same or similar subjects when construing ambiguous statutory language).

¶ 35    As an initial matter, we note that the language Mena invokes was removed from section 18-3-402(1)(a) in 2022, when the General Assembly eliminated the "means of sufficient consequence reasonably calculated to cause submission against the victim's will" language and replaced it with "knowing the victim does not consent."  Ch. 41, sec. 1, § 18-3-402(1)(a), 2022 Colo. Sess. Laws 214.  The General Assembly did not amend section 18-3-404(1.5) at that time.[3]

¶ 36    Beyond that now-repealed language, Mena contends that the only relevant "means" intended by the General Assembly are found in a different subsection of the sexual assault statute — subsection (4) — which sets forth only those forms of sexual assault that aggravate that crime from a class 4 felony to a class 3 felony. § 18-3-402(4)(a)-(d), C.R.S. 2018 (addressing circumstances where the actor uses actual physical force or physical violence; threatens

---

[3] We do not suggest that the 2022 statutory amendment applies to Mena, whose offense occurred in 2018.  We discuss the amendment because it helps inform what the language of the unlawful sexual contact statute meant in 2018.

imminent death, serious bodily injury, extreme pain, or kidnapping; threatens retaliation against the victim or other person; or employs a drug, intoxicant, or other means to cause submission). But Mena's interpretation cannot be reconciled with the statutory history of this provision.

¶ 37     When section 18-3-404(1.5) was enacted, the crime of sexual assault was divided into three degrees: first degree sexual assault was a class 3 felony and included the types of aggravated acts that Mena references (along with what is now subsection (1)(h) — knowing the victim is physically helpless), § 18-3-402(1), C.R.S. 1989, while second degree sexual assault was a class 4 felony and included the categories now enumerated in subsections (1)(b) through (1)(g) of the sexual assault statute (along with the recently repealed "means . . . of sufficient consequence reasonably calculated to cause submission against the victim's will"),

§ 18-3-403(1), C.R.S. 1989.[4]  Third degree sexual assault encompassed what is now titled "unlawful sexual contact." § 18-3-404, C.R.S. 1989.

¶ 38     Significantly, at that time the language of section 18-3-404(1.5) incorporated "any of the means set forth in sections 18-3-402 *or 18-3-403*, C.R.S."  § 18-3-404(1.5), C.R.S. 1989 (emphasis added).  Thus, the General Assembly clearly did not intend to limit the "means" that would constitute inducement or coercion under subsection (1.5) to only those circumstances that would aggravate a sexual assault to a class 3 felony.

¶ 39     But did the General Assembly intend "means" to be limited to certain subsections under section 18-3-402 (or the former section 18-3-403), excluding those that could be said to be "circumstances" rather than "means or methods"?  We do not believe so.

---

[4] Only one of these subsections has substantially changed since then: section 18-3-403(1)(f), C.R.S. 1989, addressed a victim who was less than eighteen years old and a defendant who was the victim's guardian or was otherwise responsible for the victim's welfare, while the current similar provision addresses a victim who is fifteen, sixteen, or seventeen years old and a defendant who is at least ten years older than the victim.  § 18-3-402(1)(e), C.R.S. 2024.

¶ 40     Under Mena's reading, five of the eight ways of committing sexual assault under the statute as it existed in 2018 were phrased in terms that Mena's argument would classify as a circumstance (coupled with the defendant's knowledge of that circumstance): incapacity to appraise the nature of the conduct, erroneous belief that the defendant is the victim's spouse, two different provisions involving the age of a child victim compared to the age of the defendant, and the victim's physical helplessness.  None of these requires any conduct by the defendant to have created the circumstance.  Only the now-repealed provision regarding means reasonably calculated to cause submission against the victim's will and the still-operative provisions addressing misuse of a defendant's authority over an incarcerated or detained victim and using a medical procedure as a subterfuge can be said to be "means" under Mena's narrow definition.  *See* § 18-3-402(1)(f), (g), C.R.S. 2024.[5]

---

[5] In light of the 2022 amendment, now only *two* of the eight ways of committing sexual assault would fall under Mena's narrow construction.

21

¶ 41    Notably, at the time section 18-3-404(1.5) was enacted, both of those provisions — as well as the recently eliminated language regarding "means . . . of sufficient consequence reasonably calculated to cause submission against the victim's will" — were found in section 18-3-403.  § 18-3-403(1)(a), (g), (h), C.R.S. 1989.  If those were the only forms of sexual assault the General Assembly intended to include in the term "means" in section 18-3-404(1.5) when enacting that provision, it would not have needed to include a reference to the first degree sexual assault statute (section 18-3-402).  Yet the General Assembly chose to use the broad language "any of the means" in *either* statute, as opposed to simply cross-referencing those two or three provisions.

¶ 42    Second, Mena's narrow construction is inconsistent with the accepted definition of the term "means," both at the time the General Assembly originally used it and as it is presently understood.  At the time the General Assembly approved the language, Black's Law Dictionary defined "means" as "[t]hat through which, or by the help of which, an end is attained; . . . intermediate agency or measure; necessary condition or co-agent."  Black's Law

22

Dictionary 884 (5th ed. 1979).[6]  The current edition of Black's Law Dictionary defines "means" as "[s]omething that helps to attain an end; an instrument; a cause."  Black's Law Dictionary 1171 (12th ed. 2024).  As the People contend, each of the eight ways of committing sexual assault provides the "means" through which an end (a child exposing intimate parts or engaging in sexual contact) is attained.

¶ 43    Thus, Mena's attempt to distinguish "pre-existing circumstances" from the concept of "means" is unavailing.  Each of the enumerated ways to commit sexual assault in section 18-3-402, C.R.S. 2018, provides possible means of committing unlawful sexual contact (coerce child) under section 18-3-404(1.5).

¶ 44    Applying this interpretation, the prosecution needed to prove that "[a]t the time of the commission of the act, the victim [was] less than fifteen years of age and the actor [was] at least four years older than the victim and [was] not the spouse of the victim," § 18-3-402(1)(d), and the act resulted in the victim exposing

---

[6] The next edition of Black's Law Dictionary, published the year after the General Assembly enacted section 18-3-404(1.5), C.R.S. 1989, contained the same definition.  Black's Law Dictionary 980 (6th ed. 1990).

intimate parts or engaging in unlawful sexual contact.
§ 18-3-404(1.5). The prosecution presented evidence that at the time of the alleged assault (1) K.B. was twelve years old; (2) Mena was fifty-one years old; and (3) Mena was married to K.B.'s grandmother, not K.B. The prosecution also presented evidence that during the alleged assault, Mena both uncovered K.B.'s breasts and vagina, thereby exposing her intimate parts, and subjected her to unlawful sexual contact. Based on these facts, the jury could have reasonably found the essential elements of unlawful sexual contact (coerce child) were satisfied beyond a reasonable doubt.

## IV. Equal Protection Challenge

¶ 45 Finally, Mena contends that, as applied to him, his conviction for unlawful sexual contact (coerce child) under section 18-3-404(1.5), C.R.S. 2024, violates his equal protection rights. We agree.[7]

---

[7] In the trial court, Mena asserted both a facial and an as-applied challenge to the statute. On appeal, Mena pursues only the as-applied challenge.

## A. Standard of Review and Applicable Law

¶ 46    We review de novo the constitutionality of a statute as applied to a particular defendant. *People v. Trujillo*, 2015 COA 22, ¶ 15. Because statutes are presumed to be constitutional, Mena must establish beyond a reasonable doubt that the statute is unconstitutional as applied to him. *Id.*

¶ 47    The Colorado Constitution, through its due process clause, guarantees every person within Colorado's jurisdiction the equal protection of the laws. *Dean v. People*, 2016 CO 14, ¶ 11. That protection is violated "where two criminal statutes proscribe identical conduct, yet one punishes that conduct more harshly." *Id.* at ¶ 14. The same is true where statutes address different acts but offer no rational explanation for disparate punishments. *People v. Wilhelm*, 676 P.2d 702, 704 (Colo. 1984). And "Colorado's guarantee of equal protection is violated where two statutes proscribe similar conduct, yet the scheme imposes the harsher penalty . . . for actually causing[] a less grievous result." *Dean*, ¶ 15.

¶ 48    In considering an equal protection challenge, we must determine "whether — under the specific circumstances under

25

which [the defendant] acted — the relevant statutes, or specific subsections of the statutes, punish identical conduct, and whether a reasonable distinction can be drawn between the conduct punished by the two statutes." *Trujillo*, ¶ 21. "A reasonable distinction is one that is 'real in fact and reasonably related to the general purposes of criminal legislation.'" *People v. Maloy*, 2020 COA 71, ¶ 14 (quoting *People v. Marcy*, 628 P.2d 69, 74 (Colo. 1981)).

## B. Analysis

¶ 49 Sexual assault on a child (SAOC) occurs when a defendant "knowingly subjects another not his or her spouse to any sexual contact . . . if the victim is less than fifteen years of age and the actor is at least four years older than the victim." § 18-3-405(1), C.R.S. 2024. Under subsection (1), SAOC is a class 4 felony, § 18-3-405(2), but does not require a mandatory sentence in the custody of the DOC.[8]

---

[8] If the SAOC is accomplished by the actual application of physical force, physical violence, or a threat, it is a crime of violence that carries a mandatory prison sentence. § 18-3-405(2)(a)-(c), (3), C.R.S. 2024.

¶ 50    Unlawful sexual contact (coerce child) is a class 4 felony. § 18-3-404(2)(b).  The statute provides that defendants convicted of a class 4 felony under subsection (2)(b) are required to be sentenced "in accordance with the provisions of section 18-1.3-406." § 18-3-404(3).  This language means the offense is a "per se" crime of violence that carries a mandatory sentence to the DOC.  *See People v. Austin*, 2018 CO 47, ¶ 8.

¶ 51    Mena argues that, as applied to him, the difference in penalties under these statutes — namely, the mandatory DOC sentencing for one but not the other — is "not rationally related to . . . [a] legislative objective" and therefore violates his equal protection rights.  *People v. Suazo*, 867 P.2d 161, 164 (Colo. App. 1993).  We agree.

¶ 52    As Mena was charged, SAOC and unlawful sexual contact (coerce child) both require a victim who is less than fifteen years old, an actor who is at least four years older than the victim, and the absence of a spousal relationship between the victim and the actor.  § 18-3-405(1); § 18-3-404(1.5); § 18-3-402(1)(d).

¶ 53    Although the People argue that there are material differences between the statutes, they incorrectly assert that SAOC requires

27

proof of sexual penetration or intrusion. As noted, SAOC requires proof of sexual *contact,* not penetration or intrusion. § 18-3-405(1).

¶ 54 The People also argue that unlawful sexual contact (coerce child) requires proof of coercion or inducement, while SAOC does not. That is true. But where, as here, the People elect to prove coercion or inducement through nothing more than the existence of a nonmarital relationship with the prohibited age difference, unlawful sexual contact (coerce child) proscribes exactly the same conduct that SAOC does.[9]

¶ 55 As applied to Mena, the only difference between the two crimes is that SAOC requires sexual contact, while unlawful sexual contact (coerce child) can be accomplished either with unlawful sexual

---

[9] Notably, notwithstanding significant evidence that Mena accomplished both the SAOC and the unlawful sexual contact by application of actual physical force (by pushing K.B. into the bathroom and pinning her against the wall), the prosecution did not charge this aggravator, nor was the jury instructed on this point, for either offense. Had the prosecution elected to proceed in this fashion, both crimes would have exposed Mena to identical mandatory, indeterminate prison sentences. *Compare* § 18-3-405(2)(a), (3) (imposing mandatory, indeterminate prison sentence for SAOC where "actor applies force against the victim in order to accomplish . . . sexual contact"), *with* § 18-3-404(2)(b), C.R.S. 2024, *and* § 18-3-402(4)(a) (imposing mandatory, indeterminate prison sentence for unlawful sexual contact achieved through the "actual application of physical force").

contact *or* upon the child exposing her intimate parts.  Thus, the latter offense prohibits either the exact same conduct or less egregious conduct.  Yet the offense that *does not require contact* carries a mandatory prison sentence, while the crime with the more egregious result does not.  Colorado's unique equal protection doctrine prohibits either outcome.  *Dean,* ¶¶ 14-15.

¶ 56     Mena's conviction for unlawful sexual contact (coerce child) cannot stand.  *See Maloy,* ¶ 35.  We therefore vacate Mena's conviction for that offense.  We affirm the convictions on the remaining counts.  We note, however, that because Mena's remaining convictions are eligible for probation sentences, we cannot tell whether the trial court would have considered a probation sentence in the absence of the mandatory prison sentence required by the vacated conviction.  Thus, he is entitled to a new sentencing hearing at which the court can consider a probation sentence.  *See People v. Johnson,* 2015 CO 70, ¶ 42 (holding that when reversal of one or more convictions in a multi-count case causes the "sentencing scheme to unravel," the trial court should have the opportunity to "reassess [the] sentence and exercise its sentencing discretion under new and different

29

circumstances").  We express no opinion on the appropriateness of any particular sentence.

## V.    Disposition

¶ 57    The conviction for unlawful sexual contact (coerce child) is vacated.  The remaining convictions are affirmed.  We remand the case to the district court for a new sentencing hearing on all counts other than unlawful sexual contact (coerce child).

JUDGE PAWAR and JUDGE SCHUTZ concur.