24CA0346 Peo v Chadwick 07-10-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0346
Mesa County District Court No. 23CR166
Honorable Valerie J. Robison, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Holden John Ryan Chadwick,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE SCHOCK
Dunn and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 10, 2025

Philip J. Weiser, Attorney General, Brian M. Lanni, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Holden John Ryan Chadwick, Pro Se

¶ 1    Defendant, Holden John Ryan Chadwick, appeals his convictions on two counts of attempt to influence a public servant.[1] He argues that (1) the evidence was insufficient to sustain the convictions; (2) the statute is unconstitutionally vague as applied to his conduct; (3) the district court erroneously excluded relevant testimony; and (4) the district court plainly erred by failing to ensure jury unanimity as to one of the counts.  We affirm.

## I.    Background

¶ 2    Chadwick was a deputy district attorney in Mesa County.  At the request of a friend who had been accused of a crime in Boulder County, Chadwick emailed the Boulder County District Attorney's (DA's) Office to ask if there was a pending investigation of the friend, whose name was Max Clark.  Chadwick claimed that Clark was a "potential witness/victim" in Mesa County and that he "need[ed] to know if [Clark] ha[d] any associated investigations that may impact our case."  A paralegal responded that there were no such investigations, which Chadwick passed on to Clark.

---

[1] Chadwick was also convicted of first degree official misconduct and false reporting to authorities, but the issues he raises on appeal do not implicate those convictions.

¶ 3    Finding the email "a little odd," the Boulder County DA forwarded it to the Mesa County DA, Dan Rubinstein, who forwarded it to the Mesa County Chief Investigator, James Cannon. Cannon called Clark, who said he had never been to Grand Junction and was not a witness or victim there. When Clark told Chadwick the investigator had contacted him, Chadwick surmised that Cannon was "[p]robably just making sure [Chadwick's] inquiry was legit" and that "if they want[ed] to investigate [Chadwick] and [Clark], then they've got a lot of time on their hands."

¶ 4    Cannon then met with Chadwick, and Chadwick told him that defense counsel in a hit-and-run case had given him Clark's name as a defense witness. Cannon asked Chadwick for the case number so he could upload his recorded phone call with Clark into the evidence management system. After several days of failing to provide the case number, Chadwick told Cannon that the witness in his case was actually "Matt" Clark and that his prior inquiry had been based on wrong information. Cannon again asked for the case number, and Chadwick gave him the case number of a hit-and-run case he was handling, which had nothing to do with Clark.

¶ 5     Right after that conversation, Chadwick added a note to the case in the case management system stating that the defense attorney had identified Max Clark, and then Matt Clark, as a potential witness. Unbeknownst to Chadwick, Cannon was logged into the system at the same time and saw the note appear in real time. Cannon then contacted the defense attorney, who denied providing Chadwick the name of either Matt Clark or Max Clark.

¶ 6     Cannon reported this information to Chadwick's supervisor, Trish Mahre. Mahre and another one of Chadwick's supervisors, Richard Tuttle, asked Chadwick if he knew Clark personally. Chadwick said he did not. But Cannon later searched Chadwick's social media and discovered he and Clark were acquaintances.

¶ 7     In the meantime, Chadwick emailed the defense attorney on the case he had identified and asked her if she had told him "something about a potential witness . . . named Max Clark or Matt Clark." Defense counsel said she was not aware of any witness by that name. Around the same time, Chadwick texted Clark and told him, "You and I don't know each other personally if they call back."

¶ 8     Based on the investigation and Chadwick's meeting with Mahre and Tuttle, Rubinstein decided he "needed to take action."

He met with Chadwick to "give him one last opportunity to come clean." In that meeting, Chadwick admitted that he knew Clark. Chadwick was placed on administrative leave and then fired.

¶ 9 Chadwick was charged (by a different DA's office) with tampering with a witness or victim, first degree official misconduct, three counts of attempt to influence a public servant, false reporting to authorities, and tampering with physical evidence.

¶ 10 He was convicted of first degree official misconduct, two counts of attempt to influence a public servant — one as to Cannon and one as to Mahre "and/or" Tuttle — and false reporting to authorities. The tampering with a witness charge was dismissed at trial, and Chadwick was acquitted of the remaining charges.

## II. Sufficiency of the Evidence

¶ 11 Chadwick contends that the evidence was insufficient to support his convictions for attempt to influence a public servant. As to Cannon, Chadwick asserts that the evidence was insufficient to prove that he knew Cannon was acting in his official capacity or intended to influence his actions. As to Mahre and Tuttle, he asserts that he could not be convicted of attempting to influence them because they did not have authority to fire him. We disagree.

4

A. Standard of Review and Applicable Law

¶ 12 In reviewing the sufficiency of the evidence, we review the record de novo to determine whether the evidence was sufficient both in quantity and quality to sustain the conviction. *Johnson v. People*, 2023 CO 7, ¶ 13. We do not "serve as a thirteenth juror and consider whether [we] might have reached a different conclusion." *People v. Harrison*, 2020 CO 57, ¶ 33. Instead, we view the evidence as a whole and in the light most favorable to the prosecution to determine if it is "substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt." *Johnson*, ¶ 13 (citation omitted).

¶ 13 As relevant to this case, a person commits the crime of attempt to influence a public service if the person

> attempts to influence any public servant by
> means of deceit . . . with the intent thereby to
> alter or affect the public servant's decision,
> vote, opinion, or action concerning any matter
> which is to be considered or performed by the
> public servant or the agency or body of which
> the public servant is a member . . . .

§ 18-8-306, C.R.S. 2024.

¶ 14 A "[p]ublic servant" is "any officer or employee of government, whether elected or appointed, and any person participating . . . in

performing a governmental function," with the exception of witnesses. § 18-1-901(3)(o), C.R.S. 2024. A "[g]overnmental function" is "any activity which a public servant is legally authorized to undertake on behalf of government." § 18-1-901(3)(j).

## B. Cannon

¶ 15    Chadwick's conviction for attempt to influence Cannon was based on Chadwick's false statements to Cannon that Clark, and then another person with the same last name, had been identified by defense counsel as a potential witness in a hit-and-run case. We conclude that the evidence was sufficient to sustain this conviction.

¶ 16    Cannon testified that he contacted Chadwick after Rubinstein directed him to investigate Chadwick's email to the Boulder County DA's office. When Cannon asked Chadwick for the case number so he could file his interview with Clark in the records management system, Chadwick gave him a false case number and told him that the potential witness's name was actually Matt Clark. Chadwick then added a note in the case management system falsely stating that the defense attorney in the case had identified Max Clark, and then Matt Clark, as a potential witness. The same day, Chadwick texted Clark that he hoped the situation would "go[] away." A jury

6

could reasonably infer from these circumstances that Chadwick intended his false statements to alter Cannon's investigation by leading him to believe that Chadwick had done nothing wrong. *See People v. Sena*, 2016 COA 161, ¶ 16 ("Intent can rarely be proven other than through circumstantial or indirect evidence.").

¶ 17    Chadwick argues that the evidence was insufficient to prove he intended to influence the investigation because Cannon never told Chadwick he was investigating him. Given the evidence as a whole, a jury could reasonably conclude that Chadwick was aware he was being investigated, even if Cannon did not say that expressly. But regardless, section 18-8-306 does not require the prosecution to prove that a defendant intended to alter an *investigation*; it requires only an intent to affect any "action concerning any matter which is to be considered or performed by the public servant." And, at a minimum, the evidence was sufficient to support the conclusion that, by identifying a false case number, Chadwick intended to cause Cannon to enter his recorded interview in the record management system for that case. That itself was an action performed by Cannon as a public servant.

¶ 18    Chadwick's reliance on *People v. Tee*, 2018 COA 84, is misplaced. In *Tee,* the division concluded that the defendant's filing of a false accident report at an online kiosk was insufficient to sustain a conviction for attempting to influence a public servant because the defendant had no knowledge of the public servant's involvement in approving the report. *Id.* at ¶ 53. But the evidence in this case establishes that Cannon told Chadwick he needed the case number so he could file the recorded interview. Thus, the evidence was sufficient to prove that Chadwick "knew of [Cannon's] involvement" — at a minimum, in the official act of preparing and filing the report of his call with Clark. *Id.*; *see also id.* at ¶¶ 47-49 (holding that evidence was sufficient to support a different conviction for attempt to influence a public servant where the defendant provided false information to a police officer, who prepared and filed a report based on the information provided).

¶ 19    Chadwick also suggests that Cannon was not acting as a "public servant" because it was unclear whether he had the authority to investigate coworkers. But Cannon testified that part of his job is to upload evidence and reports of his investigations into the records management system. As to this case, Cannon testified

8

that he needed the case number so he could "finish [his] job with this [d]efense witness" by uploading the recorded interview as evidence in the hit-and-run case and preparing a police report. This testimony was sufficient to establish that when Cannon asked Chadwick for the case number of the hit-and-run case, he was "working in accordance with [his] official duties." *People v. Knox*, 2019 COA 152, ¶ 46. And because Cannon told Chadwick why he needed the case number, the evidence was sufficient to establish that Chadwick knew Cannon was acting in that official capacity.

¶ 20 As to the investigation more generally, Cannon testified that he was "doing [his] job as a DA Investigator" by investigating what he "thought was a hit-and-run case that . . . morphed into a personnel issue." Rubinstein also testified that his office is authorized to investigate its own employees and that he asked Cannon to conduct the investigation because Cannon "does all of [Rubinstein's] sort of internal personnel stuff." Thus, whether as to the specific act of uploading the interview or the investigation as a whole, the evidence was sufficient to support a conclusion beyond a reasonable doubt that Chadwick intended to affect Cannon's "performance of [his] official duties." *Tee*, ¶ 46 (citation omitted).

9

## C.    Mahre and Tuttle

¶ 21    Chadwick argues that the evidence was insufficient to support his conviction for attempting to influence Mahre and Tuttle because they did not have the authority to fire him.  But section 18-8-306 does not require that the public servant in question have decision-making authority.  *See Tee*, ¶ 48 (upholding conviction even though the officer testified that he did not make any decisions).

¶ 22    Moreover, even if Rubinstein had the ultimate authority to terminate Chadwick's employment, the evidence established that Mahre and Tuttle, as Chadwick's supervisors, played a part in that decision.  Tuttle testified that Rubinstein always sought out supervisors' opinions "when it came to employee situations" and "what action[,] if any, to take" in response to problems with an employee.  Rubinstein confirmed that he relied on Mahre and Tuttle's opinions because, as Chadwick's supervisors, "[t]hey're the ones who have the most direct knowledge as to what the conduct was and what the expectations/performance issues are."  This testimony was sufficient for a rational trier of fact to conclude, at a minimum, that Chadwick "anticipated a different result" — namely,

an adverse employment action — if he had revealed his relationship with Clark during the meeting with his supervisors.  *Sena,* ¶ 16.

¶ 23     Chadwick also maintains that an attempt to influence an employment decision categorically falls outside section 18-8-306 because the statute does not specifically mention employment decisions.  We disagree.  Section 18-8-306 applies to an attempt to influence *any* public servant concerning *any* matter to be performed by that public servant.  It does not exempt employment decisions.

¶ 24     Thus, viewing the evidence as a whole and in the light most favorable to the prosecution, it was sufficient to support each of Chadwick's convictions for attempt to influence a public servant.

### III.   Constitutionality of Section 18-8-306

¶ 25     Chadwick also contends that section 18-8-306 is unconstitutionally vague as applied to his conduct in this case because the statute does not specify whether it applies to attempts to influence employment decisions.  We are not persuaded.

### A.   Standard of Review and Applicable Law

¶ 26     Because statutes are "presumed to be constitutional," a party challenging a statute as unconstitutionally vague "has the burden of proving unconstitutionality beyond a reasonable doubt."  *People*

11

*v. Janousek*, 871 P.2d 1189, 1195 (Colo. 1994). We review de novo whether a statute is unconstitutionally vague as applied. *People v. Graves*, 2016 CO 15, ¶ 9. When, as here, the vagueness argument is unpreserved, we review for plain error, meaning the error must be "obvious, substantial, and 'so undermine[] the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction.'" *Johnson*, ¶¶ 28-29 (citation omitted).

¶ 27 A criminal statute must define the offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *People v. Montante*, 2015 COA 40, ¶ 44 (citation omitted). A statute is unconstitutionally vague if it "fail[s] to provide the kind of notice that will enable . . . the ordinary citizen to conform [their] conduct to the law." *Id.* (citation omitted). A statute is unconstitutionally vague as applied "if it does not, with sufficient clarity, prohibit the conduct against which it is enforced." *Id.*

### B.    Analysis

¶ 28 Chadwick's sole argument concerning the constitutionality of section 18-8-306 is that it does not specify that it applies to public

servants performing employment functions, and thus, it is unclear whether it applies to attempts to influence employment decisions.

¶ 29    The supreme court has rejected a facial vagueness challenge to section 18-8-306, concluding that "the statute clearly delineates the type of conduct . . . that subjects a person to criminal prosecution." *Janousek*, 871 P.2d at 1196.  In so holding, the court also noted that "the statute is not vague since it requires the prosecution to prove that the defendant acted with the specific intent." *Id.*  We reach the same conclusion as to Chadwick's argument that the statute is vague as applied.  *See Montante*, ¶ 46.

¶ 30    Section 18-8-306 applies to an attempt to influence "*any* public servant" by means of deceit with the intent to affect the public servant's decision or action concerning "*any* matter which is to be . . . performed by the public servant."  (Emphases added.)  Section 18-1-901 provides that a "public servant" is "*any* . . . employee of government" performing "*any* activity which a public servant is legally authorized to undertake on behalf of government."  (Emphases added.)  Together, these provisions "are sufficiently clear such that a person of ordinary intelligence in [Chadwick's] position would not have to guess that it proscribes" lying to a government

13

investigator and one's supervisors, at least in part to avoid an adverse employment decision.[2]  *See Montante*, ¶ 46.  At a minimum, the statute is not obviously unconstitutional beyond a reasonable doubt.  *See Janousek*, 871 P.2d at 1195; *Johnson*, ¶ 29.

¶ 31     Chadwick highlights a question from the jury as to whether Tuttle and Mahre were considered "public servants" when acting in their capacity as an employer.  But the language of the statute answers that question by unambiguously providing that a "public servant" includes *any* government employee performing *any* activity the employee is legally authorized to undertake on behalf of the government.  § 18-1-901(3)(j), (o).  That definition necessarily includes a government employee performing government *employment* functions, whether separately called out or not.  *See Janousek*, 871 P.2d at 1196 ("[A] criminal statute need not contain precise definitions of every word or phrase constituting an element

---

[2] We also question Chadwick's premise that the public servants in question — particularly Cannon — were acting solely in an "employment role" or that his deception was limited to avoiding adverse employment consequences.  Given the nature of Chadwick's underlying conduct, Cannon's role as the office's chief investigator, and the scope of the investigation, it would be reasonable to infer that Chadwick understood the investigation could turn criminal.

of the offense.") (citation omitted).  Indeed, in answering the jury question, the district court directed the jury to the statutory definition of "public servant," as contained in the jury instructions.

¶ 32    Thus, because it is sufficiently clear that section 18-8-306 applies to Chadwick's conduct in this case, the statute is not unconstitutionally vague as applied.  *See Montante*, ¶ 49.

## IV.    Exclusion of Testimony

¶ 33    Chadwick next argues that the district court erred by excluding testimony from his wife, Emily Chadwick, that Cannon had previously told her he did not investigate coworkers.  We discern no reversible error because any error was harmless.

### A.    Additional Background

¶ 34    Chadwick called Emily[3] as a witness at trial.  She testified that she had previously made a criminal complaint to Cannon against someone at the Mesa County DA's Office.  Defense counsel asked her what Cannon had told her in response to that complaint.  The district court sustained the prosecution's hearsay objection.

---

[3] Because Emily Chadwick has the same last name as defendant, we refer to her by her first name, meaning no disrespect.

Defense counsel then asked whether an investigation had been completed, and the prosecution objected to relevance.

¶ 35   At a bench conference, defense counsel proffered that Emily would testify that Cannon told her he could not investigate coworkers.  Defense counsel asserted that he was not offering the statement for its truth because "there's other evidence that it's not true."  Instead, he argued that the statement, which Emily relayed to Chadwick, bore on Chadwick's intent and "whether he could believe he was influencing . . . Cannon and anything that he did."

¶ 36   The prosecution objected to the testimony on several grounds, including that it was hearsay, irrelevant, speculative, and misleading or confusing to the jury.  The district court sustained the objection without specifying its legal basis for doing so.

### B.   Standard of Review

¶ 37   The district court has broad discretion to determine the admissibility of evidence based on its relevance, probative value, and prejudicial impact.  *People v. Elmarr*, 2015 CO 53, ¶ 20.  We review evidentiary rulings for an abuse of discretion, which occurs when the ruling is "manifestly arbitrary, unreasonable, or unfair" or "based on an erroneous view of the law."  *Id.* (citation omitted).  We

16

review de novo whether a given statement constitutes hearsay. *People v. Schnorenberg*, 2023 COA 82, ¶ 10, *aff'd*, 2025 CO 43.

### C. Section 16-10-201 and Impeachment

¶ 38 Chadwick asserts for the first time on appeal that Emily's testimony should have been admitted under section 16-10-201, C.R.S. 2024. That statute allows for the admission of a witness's prior inconsistent statement "not only for the purpose of impeaching the testimony of the witness, but also for the purpose of establishing a fact," if two conditions are satisfied: (1) the witness, while testifying, was given an opportunity to explain or deny the statement, or the witness is still available to give further testimony; and (2) the previous inconsistent statement purports to relate to a matter within the witness's own knowledge. § 16-10-201(1).

¶ 39 Because Chadwick did not assert this objection in the district court, our review is for plain error, meaning that any error must be "obvious and substantial." *Hagos v. People*, 2012 CO 63, ¶ 14. Chadwick has not made this showing. *See People v. Conyac*, 2014 COA 8M, ¶ 54 (noting that it is the defendant's burden to establish plain error). He does not (1) identify the testimony by Cannon that was inconsistent with his prior statement; (2) point to anywhere in

the record that Cannon was given an opportunity to explain or deny the statement; or (3) address whether Cannon was available to give further testimony. Thus, the district court did not plainly err by failing to admit the testimony under section 16-10-201(1).

¶ 40 To the extent Chadwick asserts an impeachment argument that is distinct from his argument under section 16-10-201, he did not preserve that argument either, and the district court did not plainly err for the same reasons.[4] *See* CRE 613(a) (providing that a prior inconsistent statement may be proved by extrinsic evidence only when the witness denies or does not remember making it).

### D. Hearsay and Relevance

¶ 41 Hearsay is "a statement other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." CRE 801(c). Subject to many exceptions, hearsay is generally inadmissible. CRE 802. But "[a]n out-of-court statement offered, not for the truth of the matter it

---

[4] Chadwick argued impeachment as to a different piece of excluded evidence — an email from Mahre explaining that Emily's complaint would be investigated by the Colorado Bureau of Investigation. Chadwick does not challenge the exclusion of that email on appeal.

asserts, but solely to show its effect on the listener, is not hearsay." *People v. Robinson*, 226 P.3d 1145, 1151 (Colo. App. 2009).

¶ 42     Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Relevant evidence is admissible (except as otherwise provided), while irrelevant evidence is not. CRE 402.

¶ 43     The People concede, and we agree, that the excluded testimony was not hearsay to the extent it was offered to show that Chadwick lacked the requisite mental state to commit the crime of attempting to influence a public servant. *See Schnorenberg*, ¶ 27. Defense counsel made clear that the statement was not offered to show that, in fact, Cannon could not investigate coworkers — i.e., the truth of the matter asserted. Rather, it was offered to show that Chadwick *believed* Cannon could not investigate coworkers and, thus, could not have intended his statements to Cannon to influence the investigation. The statement was not hearsay for that purpose.

¶ 44     We also agree with Chadwick that the statement was minimally relevant for that purpose. One element of attempt to influence a public servant is "the intent . . . to alter or affect the

19

public servant's decision . . . or action." § 18-8-306; *see also Hoggard v. People*, 2020 CO 54, ¶ 18. What Cannon told *Emily* was not itself relevant to Chadwick's intent. But the proffer was that Emily relayed the statement to *Chadwick*. Chadwick's awareness of Cannon's purported position that he did not investigate coworkers could have some tendency to make it less probable that Chadwick knew there was a pending investigation for him to influence or that he intended his statements to Cannon to affect that investigation. *See People v. Mena*, 2025 COA 14, ¶ 15 ("[E]vidence is relevant if the evidence makes it more or less probable that . . . the defendant acted with the necessary criminal intent.") (citation omitted).[5]

### E. Harmlessness

¶ 45 But even assuming the district court erred, any such error was harmless. *See* CRE 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ."); *People v. Vanderpauye*, 2023 CO

---

[5] The prosecution argued in the district court that Cannon's statement to Emily presented a substantial risk of confusing the issues or misleading the jury. *See* CRE 403. Because the People do not make this argument on appeal, we do not consider it.

42, ¶ 66 (noting that we will reverse only if there is a reasonable probability that the error contributed to the conviction).

¶ 46     First, the evidence overwhelmingly established that Chadwick knew he was being investigated.  Six days before Chadwick provided the false case number to Cannon, Clark told Chadwick that the DA's office had contacted him, and Chadwick responded that the office was probably "making sure [his] inquiry was legit."  Chadwick also told Clark to lie about his involvement in a careless driving case.  Then, a few days later, Cannon asked Chadwick directly what case Clark was a witness in.  Thus, at a minimum, Chadwick knew the office was looking into his inquiry and expected them to call Clark again.  Because Chadwick knew he was being investigated — whether as a criminal or personnel matter — it does not matter whether he *previously* thought Cannon could investigate him.

¶ 47     Second, as noted above, the prosecution did not need to prove that Chadwick intended to influence an *investigation*.  It only had to prove that he intended to influence an *action* by Cannon.  *See* § 18-8-306.  And regardless of whether Chadwick believed Cannon could *investigate* him, he undoubtedly knew that Cannon was taking an

*action* based on the case number Chadwick gave him — namely, entering his recorded interview with Clark in the files for that case.

¶ 48 Because this evidence independently, and overwhelmingly, established Chadwick's intent, there is no reasonable probability that the exclusion of Emily's testimony contributed to Chadwick's conviction. We therefore conclude any error was harmless.

## V. Jury Unanimity

¶ 49 Chadwick's final contention is that the district court plainly erred by (1) labeling the second count of attempt to influence a public servant — in the verdict form and the listing of charges in the jury instructions — as "Trish Mahre and/or Richard Tuttle"; and (2) failing to give an additional instruction requiring the jury to identify which of those two individuals he attempted to influence. He argues that these two putative errors combined to deprive him of his right to a unanimous verdict on this count. We again disagree.

### A. Additional Background

¶ 50 Because Chadwick was charged with three counts of attempt to influence a public servant, the jury instructions and verdict form for those counts identified the public servants associated with each count in parentheticals. The first count was "James Cannon," the

22

second was "Trish Mahre and/or Richard Tuttle," and the third was "Sally Atkinson" (the defense counsel who Chadwick had emailed).

¶ 51　Chadwick's counsel requested a unanimity instruction for the count involving Mahre and/or Tuttle because of its use of the phrase "and/or." The district court agreed that a unanimity instruction was required, and it instructed the jury as follows:

> In order to convict the defendant of Attempt to Influence a Public Servant (Count C) [(the "Trish Mahre and/or Richard Tuttle" count)], you must either unanimously agree that the defendant committed the same act or acts, or that he committed all of the acts alleged.

### B.　Applicable Law and Standard of Review

¶ 52　A criminal defendant has the right to a unanimous jury verdict. *People v. Hines*, 2021 COA 45, ¶ 49. But unanimity is required "only with respect to the ultimate issue of the defendant's guilt or innocence of the crime charged and not with respect to alternative means by which the crime was committed." *People v. Wester-Gravelle*, 2020 CO 64, ¶ 30 (citation omitted). Nor must the jury agree on "the evidence or theory by which a particular element is established." *People v. Vigil*, 251 P.3d 442, 447 (Colo. App. 2010).

23

¶ 53    When the prosecution presents evidence of "multiple distinct acts, any one of which would establish the offense charged, 'and there is a reasonable likelihood that jurors will disagree regarding which act was committed,'" the defendant may be entitled to a modified unanimity instruction. *Wester-Gravelle*, ¶ 31 (citation omitted). Such an instruction informs the jurors that "to convict the defendant, they 'must either unanimously agree that the defendant committed the same act or acts or that the defendant committed all of the acts'" charged. *Id.* at ¶ 31 (citation omitted).

¶ 54    We review de novo whether the district court failed to give an appropriate unanimity instruction. *Hines*, ¶ 48. But because Chadwick did not object in the district court to either the "and/or" construction or the modified unanimity instruction, we review these arguments for plain error. *See Wester-Gravelle*, ¶ 27.

## C.    Analysis

¶ 55    Together, *Knox* and *People v. Snider*, 2021 COA 19, foreclose Chadwick's argument. In *Knox*, the division held that the offense of attempt to influence a public servant is defined by each "distinct volitional act[] of attempt to influence," not by the number of public servants involved. *Knox*, ¶ 35. Thus, a single act of simultaneously

lying to multiple public servants is one offense. *Id.* at ¶ 36. And when an offense is "defined in terms of discrete volitional acts[,] . . . to whom the act was directed is irrelevant." *Snider,* ¶ 51.[6]

¶ 56    In this case, the count involving Mahre "and/or" Tuttle was based on a single volitional act — Chadwick's false statement, made simultaneously to both, that he did not know Clark. In other words, as to that count, the prosecution did not present evidence of "multiple distinct acts." *Wester-Gravelle,* ¶ 31. Because the prosecution was "not required to prove that [Chadwick attempted to influence] a particular [public servant], just that he [attempted to influence] *any* [public servant,] . . . the jury was not required to unanimously agree on which [public servant]" he attempted to influence. *Snider,* ¶ 52. Regardless of whether he attempted to influence Mahre, Tuttle, or both, there was only one act.

---

[6] Chadwick cites *People v. Simmons,* 973 P.2d 627, 630 (Colo. App. 1998), which reversed a felony menacing conviction because the court failed to instruct the jury it must unanimously agree on a specific victim. But unlike the offense in this case, felony menacing is "defined in terms of the number of victims." *People v. Snider,* 2021 COA 19, ¶ 53. When an offense is instead defined by "discrete volitional acts," jury unanimity as to the victim is not required. *Id.*

25

¶ 57    In any event, the district court gave a modified unanimity instruction as to this count, requiring the jury to unanimously agree that Chadwick committed the same act or acts, or all the acts. *See Wester-Gravelle*, ¶ 31. That instruction sufficiently protected Chadwick's right to a unanimous verdict. *See Quintano v. People*, 105 P.3d 585, 594 (Colo. 2005). Because the prosecution was not required to prove the identity of a particular public servant, the district court did not err, plainly or otherwise, by failing to instruct the jury that it must agree on whether Chadwick attempted to influence Mahre, Tuttle, or both. *Cf. Wester-Gravelle*, ¶ 38 (holding that district court did not plainly err by not sua sponte giving a modified unanimity instruction where it instructed the jury that any verdict had to be unanimous as to "all parts of it").

## VI.    Disposition

¶ 58    The judgment is affirmed.

JUDGE DUNN and JUDGE BROWN concur.

26